# KNIGHT v. THE STATE.

1. The court's charge upon the subject of the kind and degree of corroboration of the testimony of an accomplice, required in the trial of one charged with a felony before a verdict of guilty would be authorized, amply covered the subject, and the refusal of the request to charge upon that subject is not ground for a new trial.

2. The request to charge upon the subject of admissions and confessions, so far as the same was material and pertinent, was sufficiently covered by the charge given.

3. The statement of the contentions of the accused, criticised in the motion for a new trial, was substantially in accord with that presented in his statement made upon the trial.

4. The court's charge upon the subject of the defense of alibi was substantially correct.

5. Where the court had properly instructed the jury upon the subject of reasonable doubt, it was not error to fail to restate the law as to reasonable doubt in connection with the following charge relative to the defense of alibi: "If you do believe, weighing it all and considering the evidence on the subject of alibi and all the other evidence within the rules of law that I have given you with reference to corroboration, that his guilt has been established, then it would be your duty to convict."

6. Where evidence is offered in mass, and parts of it are competent, an objection going to the entire evidence, without specifically pointing out that which is incompetent, will not avail the objecting party in the reviewing court.

7. The court properly excluded the testimony of the accomplice jointly indicted with this defendant, which testimony was given in the trial of another criminal case against a person not implicated in the crime with which the present defendant was charged, in which testimony the accomplice of this defendant narrated the circumstances under which he and certain other persons had blown open a safe.

8. The ground of the motion for a new trial based upon the alleged disqualification of the judge is without merit. If the facts alleged really

constituted a disqualification of the judge, counsel for the defendant had knowledge or notice of the facts constituting disqualification before the verdict, and should then have raised the question as to the disqualification of the judge by way of a motion for a mistrial or otherwise, and should not have waited until after the verdict to insist upon disqualification as a ground for a new trial.

9. The alleged newly discovered evidence relied upon as ground for a new trial, where not merely cumulative and impeaching, was not of such character as probably to cause a different result upon another trial.

10. The evidence authorized the verdict.

JULY 10, 1915.

Indictment for murder. Before Judge Edwards. Polk superior court. December 31, 1914.

*John A. Boykin, Philip Weltner,* and *Bunn & Trawick,* for plaintiff in error.

*Warren Grice,* attorney-general, *J. R. Hutcheson,* solicitor-general, *I. F. Mundy, W. W. Mundy,* and *A. L. Henson,* contra.

BECK, J. Will Knight and Jerry Farlow were jointly indicted for the murder of J. D. Freeman in Polk County, which murder was alleged to have been committed on the 29th day of April, 1914. On the trial of Will Knight the jury returned a verdict of murder, with a recommendation that he be imprisoned for life. The accused made a motion for a new trial, which was overruled, and he excepted.

1. Counsel for the defendant requested the court in writing to charge as follows: "It is not sufficient that the accomplice is corroborated as to the time, place, and circumstances of the transaction, if there is nothing in this corroborating testimony to connect the defendant with the crime; and the corroborating circumstances must be such as to connect the defendant on trial with the offense, and, independently of the testimony of the accomplice, must be sufficient to raise the inference that the defendant on trial is guilty of [as] an accomplice; the corroborating circumstances should be such as, independently of his testimony, to lead to the inference that the defendant is guilty. Facts which merely cast on the defendant a grave suspicion of guilt are not sufficient." This request was refused by the court. While the language of the request is somewhat confusing, it states substantially the law upon the subject dealt with therein (*McCalla* v. *State,* 66 *Ga.* 346; and see, in connection therewith, *Hargrove* v. *State,* 125 *Ga.* 270, 54 S. E. 164), but the refusal to give it is not error in view of the

court's actual charge upon the same subject. Upon the subject of corroboration the court charged the jury as follows: "It is not sufficient that the accomplice is corroborated as to the time, place, and circumstances of the transaction. If there is nothing in the corroborating testimony to connect the defendant with the crime,— and the corroborating circumstances must be such as to connect the defendant on trial with the offense, independently of the testimony of the accomplice. It must be sufficient to cause the inference that the defendant on trial is guilty of the offense. To warrant a conviction based on the testimony of an accomplice, the corroborating circumstances should be such as, independently of the testimony of the accomplice, to lead to the inference that the defendant is guilty. Now, gentlemen of the jury, this is a matter that is addressed to the sound judgment of the jury. As I say, it is conceded that Jerry Farlow is an accomplice in this offense; that he and some other person committed the offense. Before any other person and before the accused could be convicted upon his testimony alone, there must be some circumstance shown, which, independent of the evidence of Jerry Farlow, points to the guilt of the accused. You take all the evidence on that subject, all the surroundings, and judge of the conduct of the accused, if any conduct on his part is shown in connection with this matter, as you would with matters of the highest importance with which you have to deal in life. You judge of it as sensible men, seeking to discover the truth; you bring to bear your experience in life, and determine whether, independently of the testimony of Jerry Farlow, you believe there has been circumstances shown which points to the guilt of the accused. As I say, before any conviction could be had, these circumstances must be shown; whether, when shown, taken altogether the case is of that character as convinces you beyond a reasonable doubt, is a question for you to determine." In view of these ample instructions contained in the court's charge to the jury upon the subject of the testimony of an accomplice and the degree and kind of corroboration required, it could hardly be insisted that the refusal to give the requested instruction is ground for reversal of the judgment in this case.

2. The request to charge upon the subject of admissions and confessions, so far as the same was material and pertinent, was sufficiently covered by the charge given.

3. Error is assigned upon the following charge of the court: "Now, gentlemen of the jury, this is a matter that is addressed to the sound judgment of the jury. As I say, it is conceded that Jerry Farlow is an accomplice in this offense; that he and some other person committed the offense." This charge is criticised in the motion, upon the ground that it contains an intimation of opinion by the court upon the facts of the case; and on the ground that it tended unduly to prejudice the defendant's case by instructing the jury that the defendant had conceded that Jerry Farlow had committed the crime, contrary to the theory of the defense, which was to the effect that Jerry Farlow and his entire gang of confederates, who had been with him in another robbery, were the guilty parties in the murder. Whether or not this court will assume, in the absence of a certificate to the contrary, that the statement in the charge of what were the contentions was true, this ground of the motion is without merit, because it substantially presents a theory of the defense as contained in the defendant's own statement made during the trial. In that statement the defendant said, in connection with a description of how he went out to where Jerry Farlow was on the day after the homicide, "Walt Cline came up to me. This was on Wednesday, April 29, 1914. He said that I was just the fellow he wanted to see. I asked him what he wanted with me. He says, 'Jerry Farlow and me were in Inman Yards last night, and Jerry got shot in the leg. He is out there in an old burnt house on the left-hand side of Marietta Street near Howell Station. He needs help; go get him.' He reached in his pocket and got out a five-dollar bill and handed it to me. I went up Marietta Street and stopped and hired a horse and buggy and went after Jerry. The reason Walt Cline gave for not going was because he claimed to be done up and scared. I found the old burnt house all right, and just as I got up to Jerry—about that time, Jerry hollered at me from the inside. I helped him to the buggy and got him and started to town. On the way he told me what had happened. This was the first I ever heard of the killing of the night-watchman at Aragon Mill Store. He said he was going to tell the truth, for he needed me to help him get a doctor who I could trust. That is the way he told it, and says, 'Walt Cline and me went to Aragon last night to blow the safe in the Mill Store; there was a watchman in the store asleep, and we woke him up.

The watchman was lying on the bed, and he jumped up and grabbed Walt; they got into a scuffle, and Walt tried to get the watchman's gun away from him; it looked like he was about to get the best of him; he was a great big fellow. I heard a pistol fire, and I thought he got Walt. I got scared my time was next, and started to shooting. I do not know how many times I shot, but Walt shot four or five times.' Jerry said he had his automatic pistol and Walt had Luther Whitmire's Smith and Wesson. . . They must have wanted to lay it on me instead of Walt Cline, because they was afraid I would turn them up. So Jerry and Walt framed it up, so Walt would be left out. That was so—if Jerry should have to do any time, Walt would be on the outside to help him make his getaway. I have heard Bob Cline say that he and Jerry and Walt Cline had a scheme to get out of the penitentiary if all of them got caught." Taking the quoted extract from the statement of the defendant the court can not be fairly criticised for presenting to the jury, as a theory of the defense, that it was Farlow, a codefendant of Knight, and one Walt Cline, who committed the murder.

4. On the subject of the defense of alibi the court charged the jury as follows: "Another rule of law is, that although you may not be satisfied of the truth of the plea of alibi or that it has been established, yet if, taken in connection with all the other evidence in the case, the evidence on the subject of alibi has the effect of raising a reasonable doubt in your minds as to whether he was present at the scene of the crime at the time of its commission, then if that raises, when all of the evidence is considered, a reasonable doubt, under the rule of law I have given you no conviction could result." If this charge is open to criticism at all, the criticism should be directed to the verbiage merely, and not to the substance of the charge.

5. Where the court had properly instructed the jury upon the subject of reasonable doubt, it was not error to fail to restate the law as to reasonable doubt in connection with the following charge relative to the defense of alibi: "If you do believe, weighing it all and considering the evidence on the subject of alibi and all the other evidence within the rules of law that I have given you with reference to corroboration, that his guilt has been established, then it would be your duty to convict."

6. The admission in evidence of certain parts of a pistol and certain tools, implements, and other materials which, in his evidence, a confessed accomplice of the defendant on trial indicated as being the articles with which he and the accused were equipped on the night of the murder and some of which the accomplice stated had been concealed at certain places where they, or a part of them, were afterwards found, was not error. These articles thus offered in evidence were quite numerous, and were tendered in mass. While some of them were irrelevant, others were clearly relevant as evidence in the case; and inasmuch as they were objected to in mass, as they had been tendered, their admission was not error. Under a number of decisions by this court, where a part of evidence offered in mass is admissible, and a part of it is incompetent, the judgment will not be reversed for admitting it all, where the objections were urged to the entire mass of testimony and not specifically to that which was objectionable.

7. The defendant offered in evidence the testimony of Jerry Farlow, the accomplice, which was given upon the trial of the case of the State v. Fields, in which testimony Farlow had narrated the circumstances under which he and certain of his accomplices had blown open and rifled a safe in Griffin, Georgia, at a date prior to the murder with which he and the defendant were charged. This evidence was properly rejected. It was immaterial upon the trial of the accused in this case.

8. The ground of the motion for a new trial based upon the alleged disqualification of the judge is without merit. If the facts alleged really constituted a disqualification of the judge, the counsel for the defendant had knowledge or notice of the facts constituting disqualification before the verdict, and should then have raised the question as to the disqualification of the judge, by way of a motion for a mistrial or otherwise, and should not have waited until after the verdict to insist upon disqualification as a ground for a new trial. They could not take their chances on a verdict of acquittal, and, after an adverse verdict, insist upon the alleged disqualification.

9. There was no error in refusing a new trial upon the ground of alleged newly discovered evidence. The alleged newly discovered evidence, where not merely cumulative and impeaching, was not of

such character as probably to cause a different result upon another trial.

10. The evidence authorized the verdict.

*Judgment affirmed. All the Justices concur.*