15212.   GEORGIA STATE BANK v. HARDEN.

1. Where special or amended grounds of a motion for new trial are set out in a bill of exceptions complaining of the overruling of the motion, and where the judge unqualifiedly certifies the bill as true, this is a sufficient approval and verification of such grounds of the motion, even though they may not have been previously approved or verified.   Furthermore, since the passage of the "practice act" of 1911 (Ga. L. 1911, p. 149, sec. 3), the fact that there was not at any time any formal approval of the grounds will not prevent their consideration by this court, unless the point was first raised and insisted upon before the trial judge.

2. There were facts and circumstances in evidence and before the jury sufficient to authorize the inference that the plaintiff bank was not entitled as a matter of law to an application in its favor of the rule that

one holding a negotiable note by indorsement is presumed to be a holder bona fide, for value and without notice.

3. The mortgage note involved in this case was a negotiable instrument. Notwithstanding the ruling in the second headnote to the effect that under the facts and circumstances of the case the conclusion was not demanded that the bank under which the plaintiff held acquired the note before maturity, it indisputably appears that the payee sold, indorsed, and delivered the note to the first bank not later than March 31, 1920, which retained it until selling it to the plaintiff bank in 1922, and therefore that the defendant was not entitled, as against the plaintiff, to credits for payments which he made to the payee after March 31, 1920, the payee not having produced the note at the time, and there being no other evidence of the payee's right to make the collections, and the money so paid having never reached the plaintiff. This is true whether the payee indorsed and delivered the note before or after its maturity.

(a) If the holder of a negotiable instrument receives it after it is due, its non-payment at maturity is notice to him of dishonor, and he takes it subject to all the equities *existing* between the original parties thereto, arising out of and connected with the original contract; but the fact that a note is overdue does not destroy its character of negotiability, and equities between the maker and the payee, originating after a transfer to a third person, will not affect the rights of the holder, though the transfer be made after the note becomes due.

4. The court did not err in excluding from the evidence what the plaintiff offered as a page from a ledger-book of the payee, which the plaintiff insisted bore entries tending to show that the bank under which the plaintiff bank claimed acquired the note before maturity, there being no evidence whatever identifying the document as being in fact a sheet from the ledger.

5. A new trial being ordered for other reasons, it is unnecessary to pass upon the ground based upon alleged newly discovered evidence.

DECIDED APRIL 26, 1924. REHEARING DENIED JULY 14, 1924.

Mortgage foreclosure; from city court of Oglethorpe—Judge Greer. November 22, 1922.

*Robinson & Ford,* for plaintiff.

*Jule W. Felton,* for defendant.

BELL, J. On January 3, 1920, H. A. Harden executed a promissory note to L. A. Crawford & Son, or order, for $300, which was secured by a mortgage on personalty. The note recited a maturity date of February 1, 1920, though it provided that it was to be paid in monthly payments of $50 per month. On December 26, 1922, Georgia State Bank, holding the note and mortgage as by a blank indorsement by the payees, L. A. Crawford & Son, foreclosed the mortgage, and Harden filed an affidavit of illegality, the third ground of which, being the only ground of the original affidavit

which it is necessary to consider, was as follows: "that the Bank of Montezuma held this note as collateral security to secure indebtedness of L. A. Crawford & Son, and it authorized L. A. Crawford Jr. and A. O. Williams to collect said note from affiant and credit him with the payment. Affiant paid same to L. A. Crawford & Son by two checks for $50 each and one draft for $200, which amounts covered the entire indebtedness at the time it was paid, the exact date of which affiant does not recollect." At the trial the defendant offered an amendment, alleging that the note was paid by the defendant "in full to the owners of the same, L. A. Crawford & Son, before the same was assigned to the Bank of Montezuma,"— setting out the alleged dates, which were subsequent to its maturity. It may be stated here that it appeared upon the trial that some time in 1922 the Bank of Montezuma and the Georgia State Bank were merged, the latter acquiring all the assets of the former. The trial resulted in a verdict in favor of the defendant. The plaintiff bank filed a motion for a new trial, which was overruled, and it excepted.

Error is assigned in two grounds of the motion for a new trial upon the admission of evidence by the defendant Harden, to the effect that he had paid the note to Crawford & Son, $50 on March 8, $50 on April 10, and $200 on October 5, all in the year 1920,— upon the ground that the note had been transferred to a bona fide holder, the Bank of Montezuma, under which the plaintiff bank held, and that the defendant had no authority to pay the money to the payee. The defendant testified that the note was not exhibited to him by the payee at any payment; that the first two payments were made by mail, and that when he made the last payment the payee did not say anything about who had the note; except that he would mail it. With reference to this last payment the defendant further testified: "I knew he [a member of the payee firm] didn't have the note. He promised he would mail it to me. He didn't say where the note was. . . I saw him afterwards. He looked for the note in his office. . . He said he couldn't find it right then, but would get it and mail it to me. He didn't tell me that the note was in the bank. When I paid the $200 I knew he didn't have the note with him. I wasn't in his office; I didn't go there. The time when he looked for the note was some time in November or

December, I think it was." There was no evidence whatever that · the payee was the agent of the bank to collect the note.

These grounds of the motion for a new trial must be considered in the light of certain evidence introduced by the plaintiff. At the . outset of the trial the plaintiff's attorney said: "We tender in evidence two notes, as follows: one dated March 31, 1920, for $1,905.42, payable to Bank of Montezuma, signed by L. A. Crawford & Son, by L. A. Crawford Jr., setting forth that there are collateral notes, aggregating $3,446.25, attached; note for $300, payable to L. A. Crawford & Son, mortgage note, signed by H. A. Harden and indorsed by L. A. Crawford & Son, by L. A. Crawford Jr." The notes were admitted in evidence. H. N. Gallaher, who had held office as president of the Bank of Montezuma, testified: "I would know whether or not notes placed with the Bank of Montezuma as collateral were ever turned over to a person for collection. These principal notes of Crawford were—we tried collecting. Yes, sir, some of the Crawford notes that were placed with the Bank of Montezuma as collateral were turned over to A. O. Williams for collection. I cannot give you the time that was done. At that time the Crawfords were not in Montezuma, they had gone. We hadn't placed these notes with either of the Crawfords for collection, they were in the bank all the time." Two other special grounds of the motion for a new trial will be referred to in the opinion.

1. It is suggested by the defendant in error that the special grounds of the motion should not be considered, because they were not approved by the trial judge. Each of such grounds, however, was set out in the bill of exceptions, which the judge unqualifiedly certified as true. This was a sufficient approval and verification. *Humphreys* v. *Smith,* 128 *Ga.* 549 (1) (58 S. E. 26); *Baldwin* v. *Daniel,* 69 *Ga.* 782 (2). Furthermore, "under the 'practice act' of 1911 (Acts 111, p. 149, sec. 3), the fact that there was no formal approval of the grounds of the amendment to the motion for a new trial (the only entry thereon being 'allowed and ordered filed') will not withdraw such an amendment from the consideration of the reviewing court, or prevent this court from determining the merits of the amendment, unless the point was first raised and insisted on before the trial judge. As it does not appear in this case that any question as to the approval of the grounds of the amendment to the motion was raised before the trial judge, the sufficiency of the

judge's approval cannot now be challenged." *Mason* v. *State,* 18 *Ga. App.* 224 (1) (89 S. E. 185) ; *Lott* v. *Banks,* 21 *Ga. App.* 246 (1) (94 S. E. 322) ; *Johnson* v. *Redwine,* 21 *Ga. App.* 811 (1) (95 S. E. 315).

2. With reference to the general grounds, and also the special grounds assigning error upon the admission of the evidence of the payments, it is insisted by the defendant in error that the presumption that the bank of Montezuma acquired the note in question before maturity was rebutted to the extent that the question was one for the jury. It is noticed that the note directly in question, that is the small note, became due on February 1, 1920, and that the larger note which was introduced in connection therewith was not executed until March 31, 1920. If the small note was included in the collateral notes which secured the larger one, the Bank of Montezuma therefore acquired it after maturity. We think that the fact that the two notes were introduced at one and the same time, the manner in which they were referred to by the counsel in introducing them, and the testimony of Mr. Gallaher with reference to certain collateral notes, were sufficient (being circumstances brought in by the *plaintiff,* evidently for no other purpose) to authorize the inference that the small note was among the collateral pledged to secure the larger note, and therefore that the Bank of Montezuma acquired it after maturity.

3. But the evidence nevertheless demanded a finding for the plaintiff for the amount of the note, less the first payment. The note involved in this case was a negotiable instrument. Civil Code (1910), §§ 4270, 4273; *Reed* v. *Murphy,* 1 *Ga.* 236 (1) ; *Lynch* v. *Goldsmith,* 64 *Ga.* 42 (1). If the note was sold and transferred to the Bank of Montezuma before the defendant made the payments to L. A. Crawford & Son, the payee, such payments would not be availing as a defense, in the absence of proof of the payee's right to collect the note, or that the bank received the money, the note not having been produced by the payee at the time.

The large note had no relevancy whatsoever in this case unless it was established by that and the other evidence (and circumstances) referred to in the second division, that the small note was included in the collateral recited in its face, and thus that the small note was acquired by the Bank of Montezuma after its maturity on February 1, 1920. So then the bank could not have

obtained the small note later than the date of the larger note, to wit, March 31, 1920. This indisputably appears. One of the $50 payments and the $200 payment were both made after that date. It not being shown that the payee had the right to collect the note, or owned it, or had possession of it at the time the maker claimed to have made these payments, such payments constituted no defense to the note. *Bank of Cumming* v. *Bruce,* 22 *Ga. App.* 237, 239 (95 S. E. 718), and cases cited. Where the maker made payments upon a negotiable note to one not in possession of it, who showed no authority to receive such payment, and it did not appear that such payment had reached the real owner, the payment was not binding upon the owner. *American Agricultural Chemical Co.* v. *Graham, 9 Ga. App.* 479 (2) (71 S. E. 761). This rule is applicable whether the note had matured or not at the time the bank acquired it. "One who pays a negotiable promissory note, executed by himself, to any person other than the holder, without taking up the instrument, ought to see to it that the person receiving payment has a right to make the collection. By making the note negotiable, the maker expressly contracts to pay the same to any person who may lawfully acquire title to it in due course of trade. He therefore cannot rest upon the assumption that payment to the original payee will necessarily discharge him. Of course, as against one who takes a promissory note *after its maturity,* the maker may set up the defense that he had already paid it to the original payee *before its assignment by the latter* (italics ours) ; but where one takes such a note before its maturity, such plea of payment will not, in every instance, be available. The rule as settled by the authorities seems to be, that in such a case the holder, notwithstanding the previous payment of the note by the maker to the original payee, may collect it again, unless one of three things appears: first, that the payee was the holder's general agent for the collection of such papers; or, second, had special authority to collect in the particular instance, or, third, that the money collected by the payee in fact reached the holder's hands. It will be obvious, without further elaboration, that if the payee collected for the holder under his authority, either general or special, or if the holder actually received the money collected by the payee upon the note, this should be an end to the matter. Otherwise, the law renders the careless maker liable to pay a second time." *Bank of the University* v. *Tuck,* 96 *Ga.* 456 (1),

465 (23 S. E. 467). See also *French* v. *Campbell,* 25 *Ga.* 600; *Bank of the University* v. *Tuck,* 101 *Ga.* 104 (1) (28 S. E. 168); *Butler* v. *Barnes,* 8 *Ga.* 513 (1); *Edwards* v. *Savannah Trust Co.,* 13 *Ga. App.* 234 (1) (79 S. E. 35).

Whether the bank acquired the note before its maturity or not, it being conclusively shown that it was sold and indorsed to the bank not later than March 31, 1920, payments thereafter to the original payee were in no sense payments upon the note, *which remained at that time in the hands of the Bank of Montezuma.* The rights of this bank were later assigned to the plaintiff bank.

"If the holder [of a negotiable instrument] receives it after it is due, its non-payment at maturity is notice to him of dishonor, and he takes it subject to all the equities *existing* between the original parties thereto" (Civil Code of 1910, § 4287), arising out of and connected with the original contract (Civil Code of 1910, § 4344); but the fact that a note is overdue does not destroy its character of negotiability (see authorities cited in 46 L. R. A. 753, in note 1 to case of Young Men's Christian Association Gymnasium *v.* Rockford National Bank (179 Ill. 599, 54 N. E. 297, 70 Am. St. R. 135); and equities between the maker and the payee, originating after a transfer to a third person, will not affect the rights of the holder, though the transfer be made after the note becomes due. Whittaker *v.* Kuhn, 52 Iowa 315 (3 N. W. 127); 7 Cyc. 820 (3); 8 C. J. 389, § 576; Civil Code (1910), 3653; *Guerry* v. *Perryman,* 6 *Ga.* 119; *Central Trust Co.* v. *Fargason,* 21 *Ga. App.* 696; *Tinsley* v. *Beall,* 2 *Ga.* 134 (1), 135; *Ward* v. *Winn,* 42 *Ga.* 323; *Nix* v. *Ellis,* 118 *Ga.* 345, 346 (45 S. E. 404, 98 Am. St. Rep. 111); 2 Daniel on Negotiable Instruments (6th ed.), p. 1393, § 1233 a; 8 C. J. 479, § 697; 4 Am. & Eng. Ency. Law 246 (2), 317; Joyce on Defenses to Commercial Paper, p. 851, 853; Ogden on Negotiable Instruments, p. 169, § 182; First National Bank *v.* Texas, 20 Wall. (U. S.) 79 (1) (22 L. ed. 295). See also the discussion in 31 Harvard Law Review, p. 1104.

The rule is otherwise as to a chose in action not negotiable, the assignee of which "takes it subject to all the equities which existed between the assignor and the maker thereof at the time of the assignment; and all such equities as may attach in favor of the maker before notice of such assignment by the assignee to the maker." *Guerry* v. *Perryman,* 6 *Ga.* 119; *Jack* v. *Davis,* 29 *Ga.* 219 (1);

*Cohen* v. *Prater,* 56 *Ga.* 204; *Ward* v. *Winn,* 42 *Ga.* 323; *Clay* v. *Banks,* 71 *Ga.* 363 (1); *Metropolitan Life Ins. Co.* v. *Morrow,* 10 *Ga. App.* 433 (2) (73 S. E. 607). Civil Code (1910), § 3653.

It follows from what we have said above that the general verdict found for the defendant was unauthorized, regardless of whether the court erred in admitting the defendant's testimony as to the payments. The evidence as to the first payment, which appeared to have been made before March 31, 1920, and therefore possibly before the bank acquired the note, was admissible; but not so as to evidence of the other two payments, made after that date, the proof showing conclusively that the bank had acquired the note not later than that date. The rule is here applicable, however, that where evidence is objected to in mass, the overruling of the objection is not cause for a reversal, if any of the evidence is admissible. *Knight* v. *State,* 143 *Ga.* 678 (6) (85 S. E. 915).

4. Error is also assigned upon the rejection from evidence of what the plaintiff offered as a page from the ledger of L. A. Crawford & Son, bearing entries which purport to show that the Bank of Montezuma procured the note before maturity. Irrespective of whether this document might otherwise have been admissible, an examination of the brief of evidence shows that there was no evidence identifying it as being what it purported to be. The court did not err in excluding it.

5. A further ground of the motion for a new trial is based upon alleged newly discovered evidence, but, inasmuch as a new trial is ordered upon other grounds, it is wholly useless to pass upon this ground.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*