## 30564. ARNOLD v. THE STATE.

HALL, Justice.

This death case presents questions challenging the jury under Witherspoon v. Illinois, 391 U. S. 510 (1968) and the death sentence under the Fourteenth Amendment of the Constitution, and raises numerous enumerations of error related to trial and the defendant's murder conviction. We affirm on the guilt phase of the trial, but reverse the death sentence and remand for a new trial on the sentencing phase.

1. In Enumerations 1, 6 and 7 defendant argues that the court erred in not granting a new trial on the general grounds, in not directing a verdict because the accomplice's testimony was not corroborated, and in inadequately charging the jury on corroboration. There is no merit to these contentions.

The evidence offered by the state showed that five armed men, including the defendant, converged on the RR & S liquor store in East Point; one, Robert Smith remained outside as a lookout, Robert Binns and Jerry Arnold entered the beer side of the store, and the defendant, Grady Arnold, and Willie Ben Johnson went into the liquor side. Jerry Arnold, defendant's cousin, testified at the trial. His story was that after he heard a shot fired in the other side of the store, he saw the defendant step back with a smoking gun and watched as the victim, Ralph Scoggins, slumped down to the floor. The other attendant from the beer side was then ordered to open the safe on the liquor side of the store. One of the robbers shot at him, but missed; then, after loading the

cash in a box, they all fled. The defendant took a shot at a passerby, and with the others jumped into Jerry Arnold's red car. When they realized another car was following them, the defendant leaned out and fired at it.

Thomas Wingfield also appeared as a witness against the defendant. He clearly identified Grady Arnold as one of the persons who ran out of the store, in front of his car, and down an alley to escape. He further testified that he knew the defendant and had seen him several times before. The witness even described the kind of truck and car Arnold drove, which the defendant later confirmed.

Code Ann. § 38-121 requires that, in felony cases, an accomplice's testimony be corroborated. In *West v. State,* 232 Ga. 861 (209 SE2d 195) (1974), we held that the corroboration must be independent evidence of the identity and participation of the accused. *Brown v. State,* 232 Ga. 838 (209 SE2d 180) (1974); *Hargrove v. State,* 125 Ga. 270 (54 SE 164) (1906). Wingfield's testimony clearly provided evidence on both of these points in corroboration of co-defendant Jerry Arnold's testimony. Therefore, the trial court did not err in refusing to grant a new trial or to direct a verdict for the defendant on this ground. *Daniels v. State,* 234 Ga. 523 (216 SE2d 819) (1975); *Brown v. State,* supra; *Hackney v. State,* 233 Ga. 416 (211 SE2d 714) (1974).

The charge to the jury on corroboration correctly stated that the corroborating facts and circumstances must be independent of the accomplice's testimony and could be direct or circumstantial. However, defendant contends that the jury should also have been charged that this evidence "must cast more than a grave suspicion of guilt on the defendant," citing *Allen v. State,* 215 Ga. 455 (111 SE2d 70) (1959). This contention has already been decided adversely to defendant's position in *Whaley v. State,* 177 Ga. 757, 758 (171 SE 290) (1933) where we held that there was no error in refusing to give a *requested* instruction which incorporated this statement. A fortiori where there is no such request, there also can be no error. See *Knight v. State,* 143 Ga. 678 (85 SE 915) (1915).

2. In his third enumeration of error, the defendant contends that the trial court erred in not granting a mistrial after the following question by the state during

its redirect examination of a witness who had participated in the robbery. "In the statement that you [the witness] gave the police. . . did you implicate Grady Arnold as the man that did the shooting?" Since this question was not answered by the witness, the error, if any, was harmless. *Watson v. State,* 192 Ga. 679 (16 SE2d 426) (1941). This is especially true in light of the entire testimony by this witness which clearly implicated the defendant. Defendant's assertion that this question on redirect went beyond the scope of cross examination is also without merit.

3. Defendant's eighth claim is that the court erred in failing to grant a mistrial when the district attorney told the jury in his closing argument on the sentencing phase that "from this case; [the defendant] has lied to you." Since we are remanding this case on this phase of the trial, we need not reach the merits of this contention. See *Shy v. State,* 234 Ga. 816 (218 SE2d 599) (1975).

4. There is similarly no merit to defendant's argument that the photograph of the victim should not have been admitted, especially since the defense attorney refused to stipulate that the body autopsied by the coroner was that of the victim. *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); *Peacock v. State,* 231 Ga. 644 (203 SE2d 533) (1974).

5. In his fifth enumeration of error, defendant maintains that the trial court also should have granted a mistrial when a policeman was allowed to repeat the prejudicial words of a witness he had questioned. On direct examination, the state asked the police officer if he had looked for the defendant, Grady Arnold, as a result of a conversation with Wingfield. During cross examination, the defense attorney went into how many times the police had held Wingfield in jail for questioning, and asked for records as to how many others had been similarly detained. In order to rebut the inference that the police had acted improperly by keeping these witnesses in jail, the state then offered the exact words of the witness to explain the conduct of the officer in detaining Wingfield.

Conversation may be admitted under Code Ann. § 38-302 to explain conduct and as such is not considered

hearsay. *English v. State,* 234 Ga. 602 (216 SE2d 851) (1975). Although the better practice is to bring out the fact of the conversation without relating the exact words used, where the details are given there is no reversible error unless the words are prejudicial. *Kelly v. State,* 82 Ga. 441 (9 SE 171) (1889).

The defendant contends, however, that the conversation was prejudicial to him because it put his character in issue. Wingfield's actual statement as quoted by the policeman on the stand was "Mr. Wingfield told me that he had some information for me concerning the murder and that he wanted to talk to me privately because he was afraid to talk openly because he was afraid for his life." This comment is too nonspecific to be considered a reflection on the defendant's character, especially since Wingfield knew and had already testified that several others were involved in the crime. See *Wingfield v. State,* 231 Ga. 92 (200 SE2d 708) (1973), cert. den., 416 U. S. 942 (1974); *Collins v. State,* 129 Ga. App. 87 (198 SE2d 707) (1973); *Bryant v. State,* 65 Ga. App. 523 (16 SE2d 241) (1941).

*Lanier v. State,* 187 Ga. 534 (1 SE2d 405) (1939) and others cited by the defendant are distinguishable because, in those cases, the prejudicial words revealed prior crimes of the defendant.

The question on redirect was properly within the scope of cross examination (*Dupree v. State,* 235 Ga. 813 (221 SE2d 586) (1976); *Corbin v. State,* 81 Ga. App. 353 (58 SE2d 485) (1950); *Cameron v. State,* 66 Ga. App. 414 (18 SE2d 16) (1941)), and well within the parameters of the trial court's discretion.

There is similarly no merit to defendant's contention that the court erred in not instructing the jury that the witness' statement could be considered by them only to explain the officer's conduct. Since the omission is not "clearly harmful and erroneous as a matter of law," and because the instruction was not requested, there can be no error. *Spear v. State,* 230 Ga. 74, 75 (195 SE2d 397) (1973). Accord, *Thomas v. State,* 234 Ga. 615 (216 SE2d 859) (1975); *Slocumb v. State,* 157 Ga. 131 (121 SE 116) (1923).

6. In his second enumeration of error, defendant raises the question whether veniremen can be excluded

under the Witherspoon questions (Witherspoon v. Illinois, 391 U. S. 510 (1968)), which, though properly phrased, were not individually asked. Instead, the following took place: By the D. A. . . . "Are any of you conscientiously opposed to capital punishment? If so, please stand." Whereupon several veniremen stood. Again by the D. A. . . . "All right, now, for you ladies and gentlemen, I will ask this question. Would your opposition towards capital punishment cause you to automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before you, if you are selected as a juror? Now, if your answer to that question is yes, please raise your right hand." Six veniremen so responded and were excused for cause, over the objections of the defense.

It is readily apparent from Witherspoon v. Illinois, supra, Boulden v. Holman, 394 U. S. 478 (1968) and Maxwell v. Bishop, 398 U. S. 262 (1969) that a death sentence cannot be carried out if the excused juror voiced only general objections to the death penalty. "Such a venireman cannot be excluded unless he makes it *unmistakably clear* that he would vote against the death penalty regardless of what transpires at trial. . ." *Owens v. State,* 233 Ga. 869, 871 (214 SE2d 173) (1975). (Emphasis supplied.) *Dobbs v. State,* 236 Ga. 427 (1976); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); *Simmons v. State,* 226 Ga. 110 (172 SE2d 680) (1970); *Miller v. State,* 224 Ga. 627 (163 SE2d 730) (1968). Only then can the court be sure that the juror has understood the questions asked and is unequivocal about his response. "Unless a venireman states *unambiguously* that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." Witherspoon v. Illinois, supra, p. 516, n. 9. (Emphasis supplied.)

The precedents cited above, however, all relate to the substance of the questions asked and the answers received rather than the procedure used. The Supreme Court of the United States has held that "[v]oir dire 'is conducted under the supervision of the court, and a great

deal must, of necessity, be left to its sound discretion.' Connors v. United States, 158 U. S. 408, 413 (1895); see, Ham, supra, at 527-528; Aldridge v. United States, 283 U. S. 308, 310 (1931). This is so because the 'determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge.'" Ristaino v. Ross, —U. S.— (96 SC 1017, 47 LE2d 258). We therefore hold that any alleged need to have the Witherspoon questions individually asked does not rise to constitutional dimensions. However, the trial judge must be satisfied that each juror has understood the questions asked and has unambiguously indicated that he is unalterably opposed to the death penalty before he is excused for cause. Anything less would deprive the defendant of his constitutional right to an impartial jury under Witherspoon.

The defendant also contends that the statutory voir dire questions cannot be put to jurors as a group over objection. Code Ann. § 59-806. We disagree. It is true that for many years these statutory questions had to be propounded to the jurors individually and that was the limit of interrogation to which a juror could be subjected as a matter of right. *Williams v. State,* 60 Ga. 367 (1878); *Cady v. State,* 198 Ga. 99 (31 SE2d 38) (1944). However, in 1951 the law was amended to provide that both the state and the defendant have a right to individual examination of the jurors and that this examination shall be conducted "after the administration of a preliminary oath to the panel or, in criminal cases, after the usual voir dire questions have been put by the court . . ." Code Ann. § 59-705. This section "gives defense counsel the right to examine jurors individually after the usual voir dire questions have been put by the trial court to the jury *as a panel.*" *Whitlock v. State,* 230 Ga. 700, 705 (198 SE2d 865) (1975). (Emphasis supplied.) There was, therefore, no error in propounding the Witherspoon questions to the veniremen in a group.

7. The defendant also raises aspects of the constitutionality of the death penalty under the Georgia statute (Code Ann. § 27-2534.1) in his ninth and tenth enumerations of error. We have consistently held that this statutory scheme as a whole is constitutional and

reaffirm our holding in *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974). We have not, however, considered specifically the constitutionality of the sole aggravating circumstance found by the jury in the instant case: "The offense of murder. . . was committed by a person. . . who has a substantial history of serious assaultive criminal convictions." Code Ann. § 27-2534.1 (b) (1). Defendant points out that in no other case has the death penalty been meted out in this ground alone.[1] He further contends that this provision is unconstitutionally vague and does not provide the sufficiently "clear and objective standards" necessary to control the jury's discretion in imposing the death penalty. *Coley v. State,* supra, p. 834; Furman v. Georgia, 408 U. S. 238 (1971). We agree, and, therefore, hold this aggravating circumstance unconstitutional.

---

[1] Prior to the cases decided today there have been twenty-eight capital felony cases in which the death penalty was imposed and reviewed by this court pursuant to the Georgia Death Statute. Nineteen have been affirmed; three were reversed as to the guilt phase of the trial, and eight were reversed as to the sentence. Of the latter, in five cases, the defendant had received another death penalty in the same case on other grounds, but in two of these the second death sentence was also set aside and the case returned to the trial court for a new sentencing trial. Three other cases in addition to those two were similarly sent back. In one case, the death sentence was reduced to life.

Of the nineteen cases that were affirmed, more than one aggravating circumstance was found in seventeen of them. There were eighteen in which (b)(2)(a) (while engaged in another capital felony) was found; fifteen under (b)(7) (outrageous or involved torture); eight under (b)(4) (for the purpose of receiving monetary reward); four under (b) (1) (a) (by a person with a prior capital felony); two under (b)(2)(b) (while engaged in a burglary or arson); two under (b)(3) (created a great public risk); one under (b)(8) (against a peace officer on duty), and one other under (b)(1)(b) prior substantial assaultive history, but in that case, the jury also found two other aggravating

"A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. Rockford, 408 U. S. 104, 109 (1971). Thus, the "void-for-vagueness" doctrine "requires legislatures to set reasonably clear guidelines for triers of fact."[2] Whenever a statute leaves too much room for personal whim and subjective decision-making without a readily ascertainable standard or minimal, objective guidelines for its application, it cannot withstand constitutional scrutiny. Smith v. Goguen, 415 U. S. 566, 572 (1974); Grayned v. Rockford, supra; Coates v. Cincinnati, 402 U. S. 611 (1971); Gelling v. Texas, 343 U. S. 960 (1952); *City of Atlanta v. Southern R. Co.,* 213 Ga. 736 (101 SE2d 707) (1958); *Cox v. DeJarnette,* 104 Ga. App. 664 (123 SE2d 16) (1961). This doctrine has particular application to death penalty statutes after Furman v. Georgia, supra, where, if anything is made clear, it is that a wide latitude of discretion in a jury as to whether or not to impose the death penalty is unconstitutional. See *Coley v. State,* supra; Comment 24 Mercer L. Rev. 891, 929 (1973).

Defendant here contends that the words "substantial history" and "serious assaultive criminal convictions" are too vague and nonspecific to be applied evenhandedly by a jury. He has only two prior convictions[3] and questions

---

circumstances.

With respect to race, the cases involved twelve defendants that were white and sixteen that were black. Of the eleven cases reversed as to guilt or the sentence six were black and five were white.

[2]Grounded in the Fourteenth Amendment, the doctrine actually has two aspects: (1) fair warning to potential offenders of what the statute proscribes, and (2) standards to guide the court and jury in their determinations under that statute. Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960)

[3] In 1968, defendant pleaded guilty to two counts of assault with intent to murder, and, in 1970, to armed

whether that record constitutes a "substantial history."

Black's Law Dictionary defines "substantial" as "of real worth and importance"; "valuable." Whether the defendant's prior history of convictions meets this legislative criterion is highly subjective.[4] While we might be more willing to find such language sufficient in another context, the fact that we are here concerned with the imposition of a death sentence compels a different result. We therefore hold that the portion of Code Ann. § 27-2534.1 (b) (1), which allows for the death penalty where a "murder [is] committed by a person who has a substantial history of serious assaultive criminal convictions," is unconstitutional and, thereby, unenforceable.

The sentence of death for murder is set aside and a new trial is ordered on the issue of punishment for this offense. *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975).

*Judgment affirmed as to the conviction; reversed as to the sentence. All the Justices concur, except Gunter, J., who dissents.*

ARGUED JANUARY 15, 1976 — DECIDED APRIL 6, 1976.

*J. Douglas Willix,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley, James L. Mackay, Staff Assistant Attorneys General,* for appellee.

---

robbery, with two others, of a liquor store.

[4]We do not here reach whether "serious assaultive criminal convictions" also renders this clause unconstitutional. See United States v. Raines, 362 U. S. 17 (1960).