468 So.2d 1126 (1984)
STATE of Louisiana
v.
Elliot Joseph DAVID.
No. 82-KA-0150.
Supreme Court of Louisiana.
November 26, 1984.
Rehearing Denied January 4, 1985.
*1127 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Morel, Jr., Dist. Atty., Don Almerico, Harry Morgan, Abbott J. Reeves, Greg Champagne, Asst. Dist. Attys., for plaintiff-appellee.
G. Walton Caire, Edgard, Manina Dubroca, St. Rose, for defendant-appellant.
DENIS A. BARRY, Justice ad hoc[*].
Defendant, Elliot J. David, was convicted of first degree murder, LSA-R.S. 14:30, and sentenced to death. This court affirmed the conviction, but the sentence was reversed due to an erroneous jury instruction and the case remanded. State v. David, 425 So.2d 1241 (La.1983). Following a change of venue a second jury unanimously recommended the death penalty.
David relies on twelve assignments of error, including the constitutionality of the sole aggravating circumstance which supports the death sentence. We reverse on the constitutional issue.[1]
On March 31, 1981, David and his wife entered a Paradis, Louisiana lounge where they had drinks for about an hour. After all but one of the customers departed, David pulled a .25 cal. pistol and demanded money and valuables from the customer, bartender, and barmaid. He asked the customer whether he recognized him and received a muffled response, whereupon David placed the gun to the customer's head and pulled the trigger. The gun misfired, but David pulled the trigger a second time, firing a fatal shot into the customer's head. Following a brief struggle with the bartender, David fled the lounge with his wife, leaving behind an address book which police subsequently used to identify him. David gave oral and written confessions to the robbery and murder.
The first jury based its imposition of the capital sentence on four aggravating circumstances: the defendant was engaged in the perpetration of an armed robbery; the defendant was previously convicted of an *1128 unrelated murder and had a significant prior history of criminal activity; the defendant knowingly created a risk of great bodily harm to more than one person; and the offense was committed in an especially heinous, atrocious, or cruel manner.
The second sentencing jury heard substantially the same evidence introduced at the guilt phase of the first trial. The state argued the existence of five aggravating circumstances: the defendant was engaged in the commission of three armed robberies; the defendant had a significant prior history of criminal activity; the victim was an eyewitness to the armed robberies; the defendant knowingly created a risk of great bodily harm to more than one person; and the offense had been committed in an especially heinous, atrocious, or cruel manner. In mitigation, David claimed drug and alcohol intoxication.
Under Louisiana law the death penalty may not be imposed unless at least one aggravating circumstance is found to exist beyond a reasonable doubt. LSA-C.Cr.P. Art. 905.3. Nine aggravating circumstances are specified in LSA-C.Cr.P. Art. 905.4.
The jury found one aggravating circumstance: that the defendant has "a significant prior history of criminal activity," LSA-C.Cr.P. Art. 905.4(c), apparently based on a 1972 manslaughter conviction.[2]
On appeal defendant contends that this aggravating circumstance is unconstitutionally vague as it fails to set forth clear and objective standards necessary to channel the jury's discretion in deciding whether to impose a capital sentence. Because Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) provides that a death sentence based entirely on an unconstitutional aggravating circumstance cannot stand, defendant maintains his capital sentence is invalid.
Thus, this court is confronted with a question of first instance. Is "a significant prior history of criminal activity" so vague that it fails to narrow the jury's discretion so as to rationally distinguish a case in which the death penalty was imposed from the many in which it was not? Such would violate the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, §§ 2, 3, and 16 of the Louisiana Constitution.[3] No other state has such a provision.
Under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of an accused. State v. Union Tank Car Company, 439 So.2d 377 (La.1983), State v. Dousay, 378 So.2d 414 (La.1979). As to adequate standards, the U.S. Supreme Court has held that a criminal statute must not admit of such arbitrary and discriminatory application as to allow judges and juries to pursue their personal predilections as to what conduct is or is not proscribed. Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).
A statute which fails to establish minimal, objective guidelines sufficiently distinct to administer the law impartially and in accord with the legislative will cannot withstand constitutional scrutiny. Smith v. Goguen, supra; State v. Union Tank Car Company, supra; City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974). This rule has particular application to death penalty statutes where the legislature is under a constitutional mandate to provide clear and objective standards for channeling a jury's discretion so as to prevent the *1129 arbitrary and capricious imposition of capital punishment.
Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), virtually cleaned out State death statutes in an effort to insure that sentencing procedures will not be imposed in an arbitrary and capricious manner. Since Furman, it is axiomatic that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976).
As explained in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980):
This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates "standardless [sentencing] discretion." Gregg v. Georgia, supra [428 U.S.] at 196, n. 47, 96 S.Ct., at 2936, n. 47. See also Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929. It must channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death." 446 U.S., at 428, 100 S.Ct., at 1764-65.
In other words, the jury's discretion must be circumscribed by legislative guidelines which genuinely narrow the class of persons eligible for the death penalty and which reasonably justify the imposition of the ultimate sentence on a particular defendant as compared to a lesser penalty for others found guilty of murder. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).
In State v. Martin, 376 So.2d 300 (La.1979), this court recognized the purpose behind LSA-C.Cr.P. Art. 905.3's requirement that at least one statutory aggravating circumstance be found is to insure the jury's discretion is controlled by clear and objective standards so as to produce non-discriminatory application of the death penalty. It follows, therefore, that an aggravating circumstance which fails to provide such clear and objective standards cannot withstand constitutional scrutiny.
According to its common definition, a "significant" history would be one "having or expressing a meaning; full of meaning." Webster's New Twentieth Century Dictionary (2nd Ed.1979). Whether a defendant's criminal history is significant is wholly subjective and unrestricted. What may be significant to some would be insignificant to others. One jury may be satisfied with two convictions of simple burglary, while another might reject four such convictions as insignificant, especially when weighing a person's life or death.
"Prior" as used in Art. 905.4(c) is not defined to indicate the relevant time frame. A "prior history" may be before the crime in question, or it could include the instant offense preceding the penalty hearing.
"Criminal activity" further compounds the ambiguity inherent in this aggravating circumstance. Does "criminal activity" refer to criminal convictions, or does it encompass arrests as well? Does it refer only to felony convictions or does it include misdemeanors? Is a juvenile record subject to scrutiny and consideration?
The constitutional infirmity of Art. 905.4(c) becomes painfully apparent when one considers the case of Tyronne Lindsey where two juries reached opposite conclusions as to whether the defendant's prior convictions for simple burglary and simple battery constituted a "significant prior history of criminal activity." Lindsey's first jury thought that they did not, State v. Lindsey, 404 So.2d 466 (La.1981); his second *1130 jury thought that they did. State v. Lindsey, 428 So.2d 420 (La.1983). However, the capital verdict was affirmed on other valid aggravating circumstances. Pretermitting the two juries' disagreement, it is obvious that prior convictions for simple burglary and simple battery would not qualify a defendant as the worst kind of offender for whom a maximum sentence is appropriately imposed. State v. Jones, 398 So.2d 1049 (La.1981). Neither would it justify imposition of the death penalty on such a defendant when compared to others found guilty of murder. Zant v. Stephens, supra. A person of ordinary sensibility could characterize almost any record of criminal activity as significant.
It is evident that Art. 905.4(c) provides no standard and leaves the court and jury free to react to nothing more than their own predilections. The statute fails to channel the jury's discretion in such a way as to rationally distinguish a case in which the death penalty is imposed from the many in which it is not. Under Furman v. Georgia, supra, and its progeny, such broad discretion is constitutionally impermissible. Accordingly, the portion of Art. 905.4(c) which permits imposition of the death penalty when the defendant "has a significant prior history of criminal activity" must be held unconstitutionally vague.
Our conclusion is buttressed by a review of comparable aggravating circumstances in the capital sentencing schemes of other jurisdictions. In Arnold v. State, 236 Ga. 534, 224 S.E.2d 386 (Ga.1976), the Georgia Supreme Court was confronted with the constitutionality of Ga.Code Ann. § 27-2534.1(b)(1) which provided for the death penalty where a murder is committed by a person who "has a substantial history of serious assaultive criminal convictions." In declaring that provision unconstitutionally vague, the Georgia court held that the phrase "substantial history" was highly subjective and failed to provide sufficiently clear and objective standards necessary to control the jury's discretion in imposing a capital sentence.[4]
Admittedly, subjective analysis is rooted in jury deliberations. However, it is impossible to strictly construe a criminal statute which is discretionary and avoid injustice or an absurd consequence.
The Arnold court did not decide whether "serious assaultive criminal convictions" was also unconstitutionally vague; however, we find it significant that this language is more specific than our Art. 905.4(c) which does not limit the jury's consideration to criminal convictions, let alone those of a "serious assaultive" nature. In fact, similar aggravating circumstances in capital sentencing statutes of other jurisdictions show that Louisiana is unique in authorizing a sentence of death based on a finding of "criminal activity" (whether or not related to assaultive criminal conduct and whether or not reduced to a conviction) which is deemed "significant."[5]
*1131 The trial judge recognized the infirmity of Art. 905.4(c) because in charging the jury she gave the following instruction:[6]
And in determining whether the defendant had a significant prior history of criminal activity, you may consider only felony convictions involving danger to human life.
Although Gregg v. Georgia, supra, and more recently, State v. Brogden, 457 So.2d 616 (La.1984), acknowledge a proper narrowing construction by a trial judge of a vague and overbroad aggravating circumstance can, in effect, constitutionalize an otherwise unconstitutional provision, those cases are not dispositive of the instant statutory infirmity. There are at least two problems with the trial judge's instruction.
First, the limiting construction is not sufficient to cure the vagueness of the aggravating factor. The instruction limits the jury's consideration to felony convictions involving danger to human life. This instruction fairly encompasses felonies which range from first and second degree murder, armed robbery and aggravated arson to negligent homicide, illegal use of weapons and driving while intoxicated (third and fourth offense). The penalties for those offenses range from one year to life imprisonment. Under the construction given by the trial judge, a twenty year old conviction for discharging a weapon in public coupled with a third drunk driving conviction could be sufficient to sustain a Art. 905.4(c) death sentence. That result would clearly be unconstitutional. Gregg v. Georgia, supra; Godfrey v. Georgia, supra.
The second problem with the limiting instruction is more fundamental. The attempted construction of "significant prior history of criminal activity" simply has no basis in Art. 905.4(c). Up to 1979, Art. 905.4(c) authorized the death penalty where "the offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping." Such a specific enumeration of particular crimes is constitutional and in accord with the majority of jurisdictions which do provide statutory aggravating circumstances dealing with a defendant's criminal record.[7]
However, in 1979, the legislature amended Art. 905.4(c) to include the unrestricted language "significant prior history of criminal activity." The legislature could have broadened Art. 905.4(c) without lessening the standard it provided the jury, either by expanding the class of enumerated felonies or by redefining the class, for example, to include felony convictions involving danger to human life. This choice by the legislature evidences a clear intent to include as a "significant prior history of criminal activity" something more than mere "felony convictions involving danger to human life." Defining what "more" was intended in a permissible way that adequately channels the jury's discretion is the primary problem.
This is not a situation where, as in State v. Brogden, supra, and State v. English, 367 So.2d 815 (La.1979), the limiting construction does no apparent violence to *1132 the legislative intent.[8] The narrowing instruction given by the trial judge effectively circumvents the obvious intent of the legislature to give the jury wide discretion. The instruction's effect is to judicially amend the legislative intent. A legislature may not abdicate its responsibility for setting criminal law standards. Smith v. Goguen, supra.
The argument that this defendant is a "hard core" offender for whom Art. 905.4(c) was not vague, whatever its implications for others possessing different criminal records, has no merit. Art. 905.4(c) is unconstitutionally vague because it contains no ascertainable standard for determining what conduct constitutes a "significant prior history of criminal activity."
One of our most fundamental social interests is that law shall be uniform and impartial. There must be nothing that savors of prejudice or favor or arbitrary whim. Therefore, we find that defendant's capital sentence was imposed under a statutory provision which created a substantial risk that the death penalty would be imposed in an arbitrary and capricious manner, and that the statute was not saved by the trial judge's preceptive attempt to cure the inherent constitutional infirmity. Recognizing our responsibility to stay within constitutional limits, this court cannot permit Art. 905.4(c) to become a "catch-all" for limitless jury discretion in cases which do not fit within any other statutory aggravating circumstance.
Accordingly, that portion of LSA-C.Cr.P. Art. 905.4(c) which provides for imposition of the death penalty where the defendant "has a significant prior history of criminal activity" is unconstitutional and defendant's death sentence must be set aside.
Our decision raises the question whether this case should be remanded for another penalty hearing. See, Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). This matter was not raised on appeal.
Accordingly, whether to remand will be considered by briefs and oral argument on a date to be set. This will not affect the running of delays for a rehearing on the constitutionality of LSA-C.Cr.P. Art. 904.5(c)
MARCUS and WATSON, JJ., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I do not consider that portion of La.Code Crim.P. art. 905.4(c) which permits imposition of the death penalty when the defendant "has a significant prior history of criminal activity" to be unconstitutionally vague. Moreover, any infirmity in art. 905.4(c) was cured by the narrowing construction given by the trial judge in charging the jury. Accordingly, I dissent from the reversal of the death penalty in this case.
WATSON, Justice (dissenting).
The provision in LSA-C.Cr.P. art. 905.4(c) which permits imposition of the death penalty when the defendant "has a significant prior history of criminal activity" is not unconstitutionally vague. It is capable of understanding and application by the average person serving on a jury.
However, there is no legal authority for the trial judge to define the term for the jury.
A prior conviction of manslaughter is a significant prior history of criminal activity and the jury properly found an aggravating circumstance. Accordingly, I respectfully dissent from the reversal of the death penalty in this case.
NOTES
[*] Justice Lemmon is recused. Judge Denis A. Barry, appointed Justice ad hoc, served in his stead.
[1] It is unnecessary to consider the other assignments of error. State v. Miller, 319 So.2d 339 (La.1975)
[2] Defendant possesses a lengthy adult record of felony arrests and convictions dating back to 1961. In 1972 defendant was charged with first degree murder of his common law wife. The charge was reduced in exchange for a guilty plea to manslaughter. The Boykin colloquy was read to the jury. However, the state failed to obtain admissable evidence of the other convictions.
[3] One member of this court stated that this aggravating circumstance is unconstitutionally vague. State v. James, 431 So.2d 399 (La.1983) (Blanche, J., dissenting).
[4] The state of Kentucky is apparently in accord. Gall v. Commonwealth, 607 S.W.2d 97 (Ky. 1980).
[5] A minority of states have what can be described as more relaxed standards for defining an aggravating circumstance dealing with a defendant's criminal record:

Arkansas provides that an aggravating circumstance exists where the defendant has "previously committed another felony involving the use of threat or violence." Ark.Crim. Code Ch. 13 § 41-1303(3) (1977).
Connecticut provides for an aggravating circumstance where the defendant has one or more convictions for crimes involving serious bodily harm which are punishable at one or more years. Conn.Gen.St.Ann. § 53A-46A(g)(2) (1980).
South Dakota has a provision identical to those struck down in Georgia, Arnold v. State, supra, and Kentucky, Gall v. Commonwealth, supra, which provides for an aggravating circumstance where the defendant "has a substantial history of serious assaultive criminal convictions." Codified Laws § 23A-27A-1(1) (1981).
Missouri finds an aggravating circumstance where the defendant "has one or more serious assaultive criminal convictions." Ann.Mo.St. § 565.032.2(1) (1984).
Nebraska provides for an aggravating circumstance where the defendant has "a substantial history of serious assaultive or terrorizing criminal activity." Rev.St. § 29-2523(1).
Pennsylvania finds an aggravating circumstance where the defendant "has a significant history of felony convictions involving the use or threat of violence to the person." Pa.C.S.A. Title 42 § 9711(d)(9) (1980).
[6] Defendant filed an opposition to the admission of the trial judge's per curiam. That opposition is without merit. See LSA-C.Cr.P. Art. 916(5) and the comments thereto.
[7] Arizona (Crim.Code § 13-703(F)(1), (2) (1982), California (Penal Code § 190.2(a)(2), (3) (1978), Colorado (Rev.Stt. § 16-11-103(6), Delaware (Code Ann. Ch. 11 § 4209(e)(1)(i) (1982), Florida (Stt.Ann. Title 45 § 921.141(5)(b) (1983), Georgia (Code Ann. § 17-10-30(B)(1) (1981), Idaho (Code § 19-2515(f)(1), Illinois (Ann.Stt. Ch. 38, § 9-1(b)(3) (1982), Indiana (Stt. § 35-50-2-9(b)(7-9) (1983), Maryland (Ann.Code Art. 27 § 413(d)(8) (1983), Massachusetts (Gen. Laws Ann. Ch. 279 § 69(a)(4) (1982), Montana (Code Ann. § 46-18-303(2) (1977), Nevada (Rev. Stt. Title 16 § 200.033.2 (1983), New Jersey (Stt. Ann. § 2C:11-3(c)(4)(a) (1982), North Carolina (Gen.Stt. § 15A-2000(e)(2) (1981), Ohio (Rev. Code Ann. § 2929.04(5) (1981), Oklahoma (Stt. Ann. Title 21 § 701.12(1) (1981), South Carolina (Code § 16-3-20(C)(a)(2) (1978), Tennessee (Code Ann. § 39-2-203(i)(2) (1981), Utah (Code Ann. § 76-5-202(1)(h) (1983), Wyoming (Stt. Ann. § 6-2-102(h)(ii) (1983).
[8] The Brogden and English cases involved interpretations of LSA-C.Cr.P. Art. 905.4(g) which creates an aggravating circumstance where "the offense was committed in an especially heinous, atrocious, or cruel manner." In both cases this court read LSA-C.Cr.P. Art. 905.4(g) as requiring evidence of "torture or the pitiless infliction of unnecessary pain on the victim." Such a definition is consistent with the legislature's intent that the murder be committed in an "especially heinous, atrocious, or cruel manner."