## 33473. BOWEN v. THE STATE.

HILL, Justice.

This is a death case. Defendant Charles Bowen was convicted August 29, 1977, by jury of murder and rape. Upon the jury's finding of a statutory aggravating circumstance as to the charge of murder (that the murder was outrageously and wantonly vile, horrible and inhumane), the defendant was sentenced to death for murder and life imprisonment for rape. The case is here on appeal and for review of the death sentence.

There was evidence presented from which the jury was authorized to find the following facts: in the early evening of Sunday, May 22, 1977, the twelve-year-old victim and two of her young girlfriends went to do some wash at a local laundromat. The victim and one friend then walked to a nearby store and while returning to the laundromat, saw the defendant sitting in his automobile parked at the curb. At that time the defendant was separated from his wife and had just had an argument with his girlfriend. He had been drinking. The victim asked the defendant to drive the two girls back to the laundromat and he agreed. After arriving at the laundromat, the victim asked the defendant if he would drive her to a cafe so that she could find her sister. Her friend got out of the automobile, and the defendant and the victim drove away. This was the last time the victim was seen alive.

The following afternoon when it began to rain, a man took refuge at a vacant house, noticed the door was open, looked inside and saw a body. Police were summoned. The victim's clothing was found beside a bloody mattress. The nude body had fourteen stab wounds about the face, chest and abdomen, one of which perforated the chest, resulting

in death from loss of blood. Material obtained from the vaginal tract revealed the presence of spermatozoa, indicating recent sexual intercourse.

Late Monday night, May 23, 1977, the Polk County sheriff's department learned that the defendant had voluntarily committed himself to the Northwest Regional Hospital in Rome. The defendant was interviewed at the hospital and after being advised of his rights, made an oral statement in the presence of the sheriff, a GBI agent and several hospital officials. The sheriff's testimony relating the oral statement was corroborated by the defendant's taped statement the following Wednesday after the defendant had been transferred to the Polk County jail.

The sheriff testified as to the defendant's oral statement and the taped statement was played for the jury. After driving the two girls to the laundromat, the defendant and the victim drove to a vacant house. While still in the car, the defendant held a knife to the victim's chest, causing a wound. The victim had difficulty undressing and the defendant cut her shoelaces with a knife. They entered the abandoned house. After sexual intercourse, the victim got up and started running toward the door at which point the defendant stabbed her in the back with the knife. The victim turned around and the defendant stabbed her in the chest. The defendant said that the victim told him to go ahead and finish her off, and "then I went crazy and I just started stabbing her."

The defendant dressed, got in the car and noticed blood on his clothes. He threw the knife away, drove a short distance, changed into clothing he had in the car, and threw his other clothes off to the side of the road. He proceeded to a truck stop and cleaned the blood from his arms with a washrag which he later threw into the bushes. He drank a bottle of iodine in an apparent suicide attempt. After waking up, he drove into Alabama, returned to Georgia and subsequently admitted himself to the hospital in Rome.

The knife, defendant's clothing, washrag and iodine bottle were recovered by police and admitted into evidence.

The defense contended that the defendant had

undergone a mental disturbance and was not in a normal state of mind when he raped and stabbed the victim. Several defense witnesses testified as to the defendant's good character and peaceful nature. There was testimony that the defendant seemed quieter and depressed during the previous two months. The defendant's wife testified as to marital problems, including his admission to her that he had a girlfriend. The wife testified as to an incident in which she refused to have sex with the defendant. She then related another incident about a week before the murder when she was called home from work after the defendant allegedly attempted a sexual attack on their 13-year-old daughter. After this, the defendant moved out of their house.

The defense psychiatrist testified that he had examined the defendant at the hospital on the day following the murder, that the defendant was suffering from psychoneuroses, depressive type, and that the defendant did not know right from wrong or, if he did, he could not adhere to the right. In rebuttal, the state presented the testimony of a psychiatrist from Central State who had evaluated the defendant pursuant to court order. He stated the defendant had an anxiety neurosis, but he knew right from wrong during the act of killing the victim.

1. The defendant contends that the verdicts are contrary to law, contrary to the evidence and strongly against the weight of the evidence. The defendant argues that because the killing occurred while he was temporarily insane, he was unable to form the requisite intent required to sustain the murder conviction.

The defendant entered the trial under a rebuttable presumption of sanity. Code Ann. § 26-606. He presented evidence including the testimony of a psychiatrist that following the rape and during the period that the defendant began stabbing the victim, he could not control his behavior. In rebuttal the state presented expert testimony that the defendant had been able to distinguish right from wrong at the time of the alleged crimes. Police authorities testified that when they interviewed the defendant the day after the victim's body was discovered, he appeared normal.

Although the evidence as to sanity was in conflict, the jury rejected the defendant's evidence and it was within its province to do so. *Staymate v. State,* 237 Ga. 661 (2) (229 SE2d 421) (1976); *Durham v. State,* 239 Ga. 697 (1) (238 SE2d 334) (1977). The evidence showed that immediately after the crimes, the defendant took steps to dispose of incriminating evidence and attempted suicide. The jury was authorized to find that he knew he had committed criminal acts. The evidence before the jury was sufficient to support the verdict.

2. The defendant contends it was error for the trial court to refuse to give his requested charge on voluntary manslaughter. He argues that the evidence of his highly emotional state and the violent nature of the crime was sufficient to indicate a sudden, violent and irresistible passion as contemplated by Code Ann. § 26-1102. "A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; . . ." Code Ann. § 26-1102.

The state's evidence showed murder and the defense was insanity. There was no evidence that any "sudden, violent, and irresistible passion" of the defendant resulted from "serious provocation" by the victim sufficient to excite such passion in a reasonable person. The victim's mentioning of the name of defendant's girlfriend is not "provocation." Where there is no evidence of the requisite provocation, it is not error to refuse to charge on voluntary manslaughter. *Bailey v. State,* 240 Ga. 112 (2) (239 SE2d 521) (1977); *Reeves v. State,* 234 Ga. 896 (1) (218 SE2d 625) (1975); *Young v. State,* 232 Ga. 285, 290 (206 SE2d 439) (1974). This enumeration is without merit.

3. *Sentence Review.* Defendant's remaining enumerations of error are considered as part of our mandatory death sentence review. Code Ann. § 27-2537.

The defendant contends that the court erred in failing to adequately charge the jury as to mitigating circumstances and in failing to make clear that the jury could recommend a life sentence even though they found a

statutory aggravating circumstance.

The "court failed to make clear to the jury that they could recommend a life sentence even if they found the existence of a statutory aggravating circumstance." *Fleming v. State,* 240 Ga. 142, 146 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327, 335 (240 SE2d 833) (1977). In *Spivey v. State,* 241 Ga. 477 (1978), a majority of this court held that " . . . the ultimate test is whether a reasonable juror, considering the charge as a whole, would know that he should consider all the facts and circumstances of the case as presented during both phases of the trial . . . and then, even though he might find one or more of the statutory aggravating circumstances to exist, would know that he might recommend life imprisonment." The charge of the court in the case before us does not meet the requirements of *Spivey v. State,* supra, and hence the death penalty must be set aside.

The convictions of the defendant for rape and murder are affirmed, as is the sentence to life for rape. The sentence of death for murder is set aside, and a new trial is allowed on the issue of punishment for that offense.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

ARGUED APRIL 10, 1978 — DECIDED JUNE 28, 1978.

*William J. Perry,* for appellant.
*John T. Perren, District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.