ZANT, WARDEN *v.* STEPHENS

No. 81–89.   Argued February 24, 1982—Decided May 3, 1982

*Daryl A. Robinson,* Assistant Attorney General of Georgia, argued the cause for petitioner.   With him on the brief were *Michael J. Bowers,* Attorney General, *Robert S. Stubbs* II, Executive Assistant Attorney General, and *Marion O. Gordon* and *John C. Walden,* Senior Assistant Attorneys General.

*John Charles Boger* argued the cause for respondent. With him on the brief were *James C. Bonner, Jr., Jack Greenberg, James M. Nabrit III, Joel Berger, Deborah Fins,* and *Anthony G. Amsterdam.**

PER CURIAM.

The respondent was convicted of murder in a Georgia Superior Court. His sentencing jury found the following statutory aggravating circumstances:[1]

---

*A brief for the State of Alabama et al. as *amici curiae* urging reversal was filed by *Charles A. Graddick,* Attorney General of Alabama, *George Deukmejian,* Attorney General of California, *Jim Smith,* Attorney General of Florida, *William J. Guste, Jr.,* Attorney General of Louisiana, *William A. Allain,* Attorney General of Mississippi, *John D. Ashcroft,* Attorney General of Missouri, and *John M. Morris III,* Assistant Attorney General, *Michael T. Greely,* Attorney General of Montana, *Paul L. Douglas,* Attorney General of Nebraska, *Richard H. Bryan,* Attorney General of Nevada, *Jeff Bingaman,* Attorney General of New Mexico, *Rufus L. Edmisten,* Attorney General of North Carolina, *Daniel R. McLeod,* Attorney General of South Carolina, and *David L. Wilkinson,* Attorney General of Utah.

*Daniel J. Popeo, Paul D. Kamenar,* and *Nicholas E. Calio* filed a brief for the Washington Legal Foundation as *amicus curiae.*

[1] The trial judge instructed the sentencing jury as follows:

"Gentlemen of the Jury, the defendant in this case has been found guilty at your hands of the offense of Murder, and it is your duty to make certain determinations with respect to the penalty to be imposed as punishment for that offense. Now in arriving at your determinations in this regard you are authorized to consider all of the evidence received in court throughout the trial before you. You are further authorized to consider all facts and circumstances presented in extinuation *[sic]*, mitigation and aggravation of punishment as well as such arguments as have been presented for the State and for the Defense. Under the law of this State every person guilty of Murder shall be punished by death or by imprisonment for life, the sentence to be fixed by the jury trying the case. In all cases of Murder for which the death penalty may be authorized the jury shall consider any mitigating circumstances or aggravating circumstances authorized by law. You may consider any of the following statutory aggravating circumstances which you find are supported by the evidence. One, the offense of Murder was committed by a person with a prior record of conviction for a

"(1) that the offense of murder was committed by a person with a prior record of conviction of a capital felony, Code Ann. § 27–2534.1(b)(1); (2) that the murder was committed by a person who has a substantial history of serious assaultive criminal convictions, Code Ann. § 27–2534.1(b)(1), supra; and, (3) that the offense of murder was committed by a person who had escaped from the lawful custody of a peace officer or a place of lawful

---

Capital felony, or the offense of Murder was committed by a person who has a substantial history of serious assaultive criminal convictions. Two, the offense of Murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim. Three, the offense of Murder was committed by a person who has escaped from the lawful custody of a peace officer or place of lawful confinement. These possible statutory circumstances are stated in writing and will be out with you during your deliberations on the sentencing phase of this case. They are in writing here, and I shall send this out with you. If the jury verdict on sentencing fixes punishment at death by electrocution you shall designate in writing, signed by the foreman, the aggravating circumstances or circumstance which you found to have been proven beyond a reasonable doubt. Unless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death. If you fix punishment at death by electrocution you would recite in the exact words which I have given you the one or more circumstances you found to be proven beyond a reasonable doubt. You would so state in your verdict, and after reciting this you would state, We fix punishment at death. On the other hand, if you recommend mercy for the defendant this will result in imprisonment for life of the defendant. In such case it would not be necessary for you to recite any mitigating or aggravating circumstances as you may find, and you would simply state in your verdict, We fix punishment at life in prison. Now, whatever your verdict may be with respect to the responsibility you have regarding sentencing please write these out, Mr. Foreman, immediately below the previous verdict you have rendered. Be sure that it is dated and that it bears your signature as foreman. Once again when you have arrived at your verdict on the sentencing phase of the case let us know. We will then receive the verdict from you and have it published here in open court. Please retire now and consider the sentence in this case." App. 18–19.

confinement, Code Ann. § 27–2534.1(b)(9)." *Stephens* v. *Hopper*, 241 Ga. 596, 597–598, 247 S. E. 2d 92, 94, cert. denied, 439 U. S. 991 (1978).

The jury imposed the death penalty. On direct appeal, the Georgia Supreme Court affirmed. *Stephens* v. *State*, 237 Ga. 259, 227 S. E. 2d 261, cert. denied, 429 U. S. 986 (1976). On the authority of *Arnold* v. *State*, 236 Ga. 534, 224 S. E. 2d 386 (1976), it set aside the second statutory aggravating circumstance found by the jury. It upheld the death sentence, however, on the ground that in *Arnold* "that was the sole aggravating circumstance found by the jury," whereas in the case under review "the evidence supports the jury's findings of the other statutory aggravating circumstances, and consequently the sentence is not impaired." 237 Ga., at 261–262, 227 S. E. 2d, at 263.

After exhausting his state postconviction remedies, *Stephens* v. *Hopper, supra,* the respondent applied for a writ of habeas corpus in Federal District Court. Relief was denied by that court, but the United States Court of Appeals for the Fifth Circuit "reverse[d] the district court's denial of habeas corpus relief insofar as it le[ft] standing the [respondent's] death sentence, and . . . remanded for further proceedings." 631 F. 2d 397, 407 (1980), modified, 648 F. 2d 446 (1981). We granted the petition for certiorari. 454 U. S. 814.

In *Gregg* v. *Georgia,* 428 U. S. 153 (1976), we upheld the Georgia death penalty statute because the standards and procedures set forth therein promised to alleviate to a significant degree the concern of *Furman* v. *Georgia,* 408 U. S. 238 (1972), that the death penalty not be imposed capriciously or in a freakish manner. We recognized that the constitutionality of Georgia death sentences ultimately would depend on the Georgia Supreme Court's construing the statute and reviewing capital sentences consistently with this concern. See 428 U. S., at 198, 201–206 (opinion of Stewart, POWELL,

and STEVENS, JJ.); *id.*, at 211–212, 222–224 (WHITE, J., concurring in judgment). Our review of the statute did not lead us to examine all of its nuances. It was only after the state law relating to capital sentencing was clarified in concrete cases that we confronted and addressed more specific constitutional challenges in *Coker* v. *Georgia*, 433 U. S. 584 (1977), *Presnell* v. *Georgia*, 439 U. S. 14 (1978), *Green* v. *Georgia*, 442 U. S. 95 (1979), and *Godfrey* v. *Georgia*, 446 U. S. 420 (1980).

Today, we are asked to decide whether a reviewing court constitutionally may sustain a death sentence as long as at least one of a plurality of statutory aggravating circumstances found by the jury is valid and supported by the evidence. The Georgia Supreme Court consistently has asserted that authority.[2] Its construction of state law is clear: "Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance does not so taint the proceedings as to invalidate the other aggravating circumstance found and the sentence of death based thereon." *Gates* v. *State*, 244 Ga. 587, 599, 261 S. E. 2d 349, 358 (1979), cert. denied, 445 U. S. 938 (1980).

Despite the clarity of the state rule we are asked to review, there is considerable uncertainty about the state-law prem-

---

[2] See *Stevens* v. *State*, 247 Ga. 698, 709, 278 S. E. 2d 398, 407 (1981); *Green* v. *State*, 246 Ga. 598, 606, 272 S. E. 2d 475, 485 (1980), cert. denied, 450 U. S. 936 (1981); *Hamilton* v. *State*, 246 Ga. 264, n. 1, 271 S. E. 2d 173, 174, n. 1 (1980), cert. denied, 449 U. S. 1103 (1981); *Brooks* v. *State*, 246 Ga. 262, 263, 271 S. E. 2d 172 (1980), cert. denied, 451 U. S. 921 (1981); *Collins* v. *State*, 246 Ga. 261, 262, 271 S. E. 2d 352, 354 (1980), cert. denied, 449 U. S. 1103 (1981); *Dampier* v. *State*, 245 Ga. 882, 883, n. 1, 268 S. E. 2d 349, 350, n. 1, cert. denied, 449 U. S. 938 (1980); *Burger* v. *State*, 245 Ga. 458, 461–462, 265 S. E. 2d 796, 799–800, cert. denied, 446 U. S. 988 (1980); *Gates* v. *State*, 244 Ga. 587, 599, 261 S. E. 2d 349, 358 (1979), cert. denied, 445 U. S. 938 (1980); *Stephens* v. *State*, 237 Ga. 259, 261–262, 227 S. E. 2d 261, 263, cert. denied, 429 U. S. 986 (1976).

ises of that rule.[3]  The Georgia Supreme Court has never explained the rationale for its position.  It may be that implicit in the rule is a determination that multiple findings of statutory aggravating circumstances are superfluous, or a determination that the reviewing court may assume the role of the jury when the sentencing jury recommended the death penalty under legally erroneous instructions.  In this Court, the Georgia Attorney General offered as his understanding the following construction of state law: The jury must first find whether one or more statutory aggravating circum-

---

[3] Last Term, Members of this Court expressed different assumptions about the meaning—and the constitutionality—of the Georgia Supreme Court's position.  In *Drake* v. *Zant*, 449 U. S. 999 (1980), the Court declined to grant certiorari and vacate the judgments in two Georgia cases in which the death sentences—premised in part on the (b)(7) aggravating circumstance—were imposed prior to our decision in *Godfrey* v. *Georgia*, 446 U. S. 420 (1980).  JUSTICE STEVENS, concurring in the disposition, expressed the opinion that the Georgia Supreme Court's position was so clear that there was no need to remand the cases for reconsideration in light of *Godfrey*.  449 U. S., at 1000.  Dissenting from the denial of certiorari, Justice Stewart stated that if one aggravating circumstance found by the jury "could not constitutionally justify the death sentence, Georgia law would prohibit a further finding that the error was harmless simply because of the existence of the other aggravating circumstance."  *Id.*, at 1001.  He believed that the Georgia Supreme Court's position on the issue was inconsistent with the Georgia capital punishment scheme because "only the trial judge or jury can know and determine what to do when upon appellate review it has been concluded that a particular aggravating circumstance should not have been considered in sentencing the defendant to death."  *Ibid.*  JUSTICE WHITE, also dissenting, would have remanded for reconsideration in light of *Godfrey*, a disposition that "would allow the Georgia Supreme Court in the first instance to determine whether the death penalty should be sustained without regard to the validity of the *Godfrey* circumstance."  449 U. S., at 1002.  He did "not understand the Georgia cases . . . to hold either that the Georgia Supreme Court is without power to set aside a death penalty if it sustains only one of the aggravating circumstances found by the jury or that, although the court has that power, it invariably will not disturb the death penalty in such situations."  *Ibid.*

stances have been established beyond a reasonable doubt. The existence of one or more aggravating circumstances is a threshold finding that authorizes the jury to consider imposing the death penalty; it serves as a bridge that takes the jury from the general class of all murders to the narrower class of offenses the state legislature has determined warrant the death penalty. After making the finding that the death penalty is a possible punishment, the jury then makes a separate finding whether the death penalty should be imposed. It bases this finding "not upon the statutory aggravating circumstances but upon all the evidence before the jury in aggravation and mitigation of punishment which ha[s] been introduced at both phases of the trial." Brief for Petitioner 13.

In view of the foregoing uncertainty, it would be premature to decide whether such determinations, or any of the others we might conceive as a basis for the Georgia Supreme Court's position, might undermine the confidence we expressed in *Gregg* v. *Georgia*, 428 U. S. 153 (1976), that the Georgia capital-sentencing system, as we understood it then, would avoid the arbitrary and capricious imposition of the death penalty and would otherwise pass constitutional muster. Suffice it to say that the state-law premises of the Georgia Supreme Court's conclusion of state law are relevant to the constitutional issue at hand.

The Georgia Supreme Court under certain circumstances will decide questions of state law upon certification from this Court. See Ga. Code § 24–4536 (Supp. 1980).[4] We invoke that statute to certify the following question: What are the premises of state law that support the conclusion that the death sentence in this case is not impaired by the invalidity of

---

[4] "When it shall appear to the Supreme Court of the United States . . . that there are involved in any proceeding before it questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State, such Federal appellate court may certify such questions or propositions of the laws of Georgia to this court for instructions concerning such questions or propositions."

one of the statutory aggravating circumstances found by the jury?

The Clerk of this Court is directed to transmit this certificate, signed by THE CHIEF JUSTICE and under the official seal of the Court, as well as the briefs and record filed with the Court, to the Supreme Court of Georgia, and simultaneously to transmit copies of the certificate to the attorneys for the respective parties.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Six years ago in *Gregg* v. *Georgia,* 428 U. S. 153, 193 (1976) (joint opinion of Stewart, POWELL, and STEVENS, JJ.), this Court declared:

> "Juries are invariably given careful instructions on the law and how to apply it before they are authorized to decide the merits of a lawsuit. It would be virtually unthinkable to follow any other course in a legal system that has traditionally operated by following prior precedents and fixed rules of law. . . . When erroneous instructions are given, retrial is often required. It is quite simply a hallmark of our legal system that juries be carefully and adequately guided in their deliberations." (Footnote omitted.)

In today's decision, a majority of this Court intimates that a *post hoc* construction of a death penalty statute by the State's highest court may remedy the fact that a jury was improperly instructed with respect to the very factors that save the Georgia statute from unconstitutionality. See *Gregg* v. *Georgia, supra.* Because I cannot see how the Georgia Supreme Court's response to this Court's certification could constitutionally justify the imposition of the death penalty in this case, I must dissent.

## I

I adhere to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the

Eighth and Fourteenth Amendments. *Gregg* v. *Georgia, supra,* at 231. Even if I believed that the death penalty could constitutionally be imposed under certain circumstances, however, I believe that respondent Stephens' sentence must be vacated and his case remanded to the Georgia state courts for resentencing.

## II

In my opinion, remanding this case for resentencing is compelled by this Court's decisions upholding the constitutionality of the Georgia death penalty statute, and by well-recognized principles of appellate review. Therefore, whether or not the Georgia Supreme Court's construction of the statute in response to this Court's certification might avoid the constitutional infirmity inherent in respondent's sentence in some future case, it can do nothing to alter the fact that respondent's death sentence may have been based in part on consideration of an unconstitutional aggravating circumstance.

Under Georgia law, certification is appropriate "[w]hen it shall appear to the Supreme Court of the United States . . . that there are involved in any proceeding before it questions or propositions of the laws of this State *which are determinative of said cause* and there are no clear controlling precedents in the appellate court decisions of this State." Ga. Code § 24–4536(a) (Supp. 1980) (emphasis added). The majority attempts to bring this case within the ambit of this certification procedure by indicating that "[i]t may be that . . . multiple findings of statutory aggravating circumstances are superfluous, or . . . the reviewing court may assume the role of the jury when the sentencing jury recommended the death penalty under legally erroneous instructions." *Ante,* at 415. The majority then requests the Georgia Supreme Court to clarify "the premises of state law that support the conclusion that the death sentence in this case is not impaired

by the invalidity of one of the statutory aggravating circumstances found by the jury." *Ante*, at 416–417.

I wholeheartedly agree that we do not know the answers to these questions. The majority recognizes that we do not possess this information because "[t]he Georgia Supreme Court has never explained the rationale for its position" that a death sentence may be reaffirmed when one of the aggravating circumstances relied on by the jury is declared invalid. *Ante*, at 415. I submit, however, that we are not alone in our ignorance. There is absolutely no indication that the jury sentencing respondent to death or the judge who instructed that jury was any more aware of the answers to these questions than we are today. Indeed, by certifying these questions to the Georgia Supreme Court, the majority concedes that it was impossible for *anyone* to know the answers to these questions at the time respondent was sentenced to death, because "there are no controlling precedents" in Georgia on these issues. Given this Court's prior treatment of cases in which a defendant received a sentence, particularly a death sentence, on the basis of erroneous jury instructions, I do not understand how the Georgia Supreme Court's answer to the certified question could possibly be "determinative" of this case.

In *Furman* v. *Georgia*, 408 U. S. 238 (1972), this Court struck down death penalties imposed pursuant to a Georgia statute. Shortly thereafter, the Georgia Legislature enacted the current death penalty statute. This statute provides for a separate sentencing proceeding after the defendant has been found guilty of a capital offense. During the sentencing phase, the trial judge shall instruct the jury[1] to consider "any of the [10] statutory aggravating circumstances which may be supported by the evidence." Ga. Code § 27–2534.1(b) (1978). The aggravating circumstances found

---

[1] In bench trials, the judge must consider these factors.

by the judge to be warranted by the evidence are submitted to the jury in writing to be used during its deliberations. § 27–2534.1(c). If the jury recommends a death sentence, it "shall designate in writing . . . the aggravating circumstance or circumstances which it found beyond a reasonable doubt." *Ibid.* Even if it finds that one or more aggravating circumstances has been established beyond a reasonable doubt, the jury is not required to impose the death penalty. See *Bowen* v. *State*, 241 Ga. 492, 246 S. E. 2d 322 (1978). The jury's verdict to impose the death penalty must be unanimous. *Miller* v. *State*, 237 Ga. 557, 229 S. E. 2d 376 (1976). The trial judge is bound by the jury's recommendation of sentence, whether that recommendation be life or death. Ga. Code §§ 26–3102, 27–2514 (1978).

In *Gregg* v. *Georgia*, 428 U. S. 153 (1976), this Court held that this statutory scheme satisfied the constitutional guarantee against cruel and unusual punishment. In reaching this conclusion, the two principal opinions relied heavily on the fact that the aggravating circumstances served to guide the jury's discretion. The joint opinion announcing the judgment of the Court emphasized that because "the members of a jury will have had little, if any, previous experience in sentencing," *id.*, at 192 (opinion of Stewart, POWELL, and STEVENS, JJ.), they should be given specific standards to guide their sentencing deliberations, such as those provided in the Model Penal Code, which catalogs "'the main circumstances of aggravation and of mitigation that should be weighed *and weighed against each other'*" by the jury. *Id.*, at 193 (quoting ALI, Model Penal Code § 201.6, Comment 3, p. 71 (Tent. Draft No. 9, 1959)) (emphasis in original). That opinion found that the new Georgia statute satisfied this requirement because, through the statutory aggravating circumstances, "[t]he new Georgia sentencing procedures . . . *focus the jury's attention* on the particularized nature of the crime and the particularized characteristics of the individual defendant." 428 U. S., at 206 (emphasis added). JUSTICE WHITE,

joined by THE CHIEF JUSTICE and JUSTICE REHNQUIST, concurring in the judgment, placed an even stronger emphasis on the role of the statutory aggravating circumstances:

> "The Georgia Legislature has plainly made an effort to guide the jury in the exercise of its discretion, while at the same time permitting the jury to dispense mercy on the basis of factors too intangible to write into a statute . . . . As the types of murders for which the death penalty may be imposed become more narrowly defined and are limited to those which are particularly serious or for which the death penalty is peculiarly appropriate *as they are in Georgia by reason of the aggravating-circumstance requirement*, it becomes reasonable to expect that juries—even given discretion *not* to impose the death penalty—will impose the death penalty in a substantial portion of the cases so defined." *Id.*, at 222 (first emphasis added).

In *Godfrey* v. *Georgia*, 446 U. S. 420, 428 (1980) (plurality opinion of Stewart, J., joined by BLACKMUN, POWELL, and STEVENS, JJ.), this Court reaffirmed the role of aggravating circumstances in protecting against the arbitrary imposition of the death penalty. The *Godfrey* Court addressed the constitutionality of a death sentence imposed in reliance on aggravating circumstance § (b)(7), which allows a jury to impose the death sentence if it finds that the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga. Code § 27–2534.1(b)(7) (1978).

The plurality opinion found: "There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" 446 U. S., at 428–429. Section (b)(7), if construed broadly enough to encompass every murder, would

be unconstitutional because it provides "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Id.*, at 433. The plurality found it significant that this interpretation of § (b)(7) "may . . . have been one to which the members of the jury in this case subscribed," and that, if the jury did hold this view "their preconceptions were not dispelled by the trial judge's sentencing instructions." *Id.*, at 429. Therefore, the jury was not given appropriate guidance, and the death sentence could not constitutionally be imposed.

In my view, this reasoning requires that respondent's death sentence be vacated and that this case be remanded so he can be resentenced by a properly instructed jury. It is conceded that the jury in this case was instructed on an aggravating circumstance that the Georgia Supreme Court has since declared unconstitutional. If this were the only aggravating circumstance found by the jury, it is also undisputed that the State would be unable to impose the death sentence, see *Arnold* v. *State*, 236 Ga. 534, 224 S. E. 2d 386 (1976), even if the Georgia Supreme Court determined that the evidence supported a finding of other statutory aggravating circumstances. Cf. *Presnell* v. *Georgia*, 439 U. S. 14, 16 (1978). Petitioner argues, however, because the jury found two other statutory aggravating circumstances that the Georgia Supreme Court found to be supported by the evidence, that court could reaffirm the death sentence. This argument flies in the face of the reasoning of the *Godfrey* plurality which found it crucial that the *jury's* decision to impose the death sentence be guided by clear and appropriate instructions.

Moreover, this argument is patently contrary to the settled principle that "if the jury has been instructed to consider several grounds for conviction, one of which proves to be unconstitutional, and the reviewing court is thereafter unable to determine from the record whether the jury relied on the unconstitutional ground, the verdict must be set aside." 631 F. 2d 397, 406 (CA5 1980) (case below); see *Stromberg* v.

*California*, 283 U. S. 359 (1931). Since 1931, this Court has consistently declined to speculate about whether a particular jury would have reached the same conclusion in the absence of an unconstitutional instruction. See, *e. g.*, *id.*, at 367–368. Accord, *Bachellar* v. *Maryland*, 397 U. S. 564, 570–571 (1970); *Street* v. *New York*, 394 U. S. 576, 585–588 (1969); *Yates* v. *United States*, 354 U. S. 298, 311–312 (1957). In light of this Court's consistent recognition that "the penalty of death is qualitatively different from a sentence of imprisonment," *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1980) (opinion of Stewart, POWELL, and STEVENS, JJ.); see, *e. g.*, *Eddings* v. *Oklahoma*, 455 U. S. 104, 117–118 (1982) (O'CONNOR, J., concurring), there is certainly no reason to engage in such speculation here. Yet, the jury is not *required* to recommend death even if it finds that one or more aggravating circumstances have been established beyond a reasonable doubt. Therefore, to adopt the bald pronouncement that "[w]here two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance does not so taint the proceedings as to invalidate the other aggravating circumstance found and the sentence of death thereon," *Gates* v. *State*, 244 Ga. 587, 599, 261 S. E. 2d 349, 358 (1979), we would have to speculate that the jury's decision to impose the death penalty was not influenced by the presence of the unconstitutional aggravating circumstance.[2]

Recognizing that settled law normally requires that sentences arguably imposed on the basis of unconstitutional instructions cannot stand, petitioner and several States in an

---

[2] To date, the majority of state courts that have confronted this issue have declined to speculate whether the jury would still have returned a death sentence in the absence of the subsequently invalidated aggravating circumstance. See, *e. g.*, *Williams* v. *State*, 274 Ark. 9, 11–13, 621 S. W. 2d 686, 687–688 (1981); *State* v. *Irwin*, 304 N. C. 93, 106–108, 282 S. E. 2d 439, 448–449 (1981); *State* v. *Moore*, 614 S. W. 2d 348, 351–352 (Tenn. 1981); *Hopkinson* v. *State*, 632 P. 2d 79, 171–172 (Wyo. 1981). See also *Cook* v. *State*, 369 So. 2d 1251, 1255–1257 (Ala. App. 1979).

*amicus curiae* brief[3] attempt to distinguish the *Stromberg* line of cases by arguing that, as a matter of statutory construction, a jury's finding that 1 of the 10 aggravating circumstances has been established beyond a reasonable doubt is irrelevant to its ultimate conclusion that the death penalty should be imposed. Specifically, petitioner argues that the term "aggravating circumstance" actually has *two* entirely different meanings, with each meaning representing a separate task that a capital sentencing jury must perform. First, the jury must determine whether any of the 10 statutory "aggravating circumstances" has been established beyond a reasonable doubt. This, petitioner argues, is a threshold determination that only allows the jury to *consider* the death penalty, but has no impact on whether that penalty should be imposed. After reaching this threshold determination, the jury may consider any "evidence in aggravation" or mitigation in reaching its conclusion as to whether the dealth penalty *should* be imposed. According to petitioner, the jury performs this second task free of any influence from the very "legislative guidelines" that, by "focus[ing] the jury's attention on the particularized nature of the crime and the particularized characteristics of the individual defendant," prevent the death penalty from being wantonly and freakishly imposed. *Gregg* v. *Georgia,* 428 U. S., at 206–207 (joint opinion of Stewart, POWELL, and STEVENS, JJ.).

Putting to one side both the plausibility and the constitutionality of petitioner's construction of the Georgia death penalty statute,[4] it is patently obvious that this *ex post facto* at-

---

[3] The States of Alabama, California, Florida, Louisiana, Mississippi, Missouri, Montana, Nebraska, Nevada, North Carolina, South Carolina, and Utah submitted an *amicus* brief on behalf of petitioner. It is interesting to note that the appellate courts of Alabama and North Carolina have already implicitly rejected the construction now urged by these States as *amici.* See n. 2, *supra.*

[4] In my view, if the Georgia Supreme Court adopted this interpretation of the death penalty statute, it would raise serious questions as to the constitutionality of this statute under *Gregg.*

tempt to avoid the clear mandate of *Stromberg* cannot possibly remedy the constitutional infirmity of respondent's sentence. This conclusion is compelled by this Court's decision in *Sandstrom* v. *Montana*, 442 U. S. 510 (1979). In *Sandstrom*, a defendant was convicted of "deliberate homicide," which, under Montana law, required the State to prove that he "purposefully or knowingly" caused the death of the victim. *Id.*, at 512. At the close of all the evidence, the judge instructed the jury that "'[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.'" *Id.*, at 513. The defendant objected to this instruction on the ground that it unconstitutionally shifted the burden of proof on the issue of intent. On direct appeal, the Montana Supreme Court conceded that shifting the burden of proof in a criminal case was unconstitutional. It nevertheless upheld the challenged instruction on the ground that under its interpretation, the instruction only shifted the burden of production rather than the burden of persuasion. *Id.*, at 513–514. In the proceedings before this Court, the State argued that the Montana Supreme Court's interpretation of the effect of the presumption was conclusive on this Court. *Id.*, at 516.

This Court unanimously[5] rejected the State's attempt to avoid the constitutional issue by the use of a *post hoc* narrowing construction by the State's highest court. While acknowledging that "[t]he Supreme Court of Montana is . . . the final authority on the legal weight to be given a presumption under Montana law, . . . *it is not the final authority on the interpretation which a jury could have given the [challenged] instruction.*" *Id.*, at 516–517 (emphasis added). Instead, this Court defined the relevant question as whether "a reasonable juror could well have been misled by the instruction." *Id.*, at 517. Even assuming the constitutionality of the Montana Supreme Court's interpretation of the pre-

---

[5] JUSTICE REHNQUIST, joined by THE CHIEF JUSTICE, filed a separate opinion concurring in both the judgment and the opinion of the Court.

sumption, an interpretation that this Court conceded might have been in the minds of "some jurors," the fact that "a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that *Sandstrom's jurors* actually did proceed upon one or the other of these latter interpretations." *Id.*, at 519 (emphasis added). "Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption . . . or a conclusive presumption," *id.*, at 524, this Court held the instruction unconstitutional and remanded the case to the state courts for proceedings not inconsistent with the opinion.[6]

In my view, the case presently before the Court presents even a stronger case for rejecting the relevance of an *ex post facto* saving construction. By certifying this question to the Georgia Supreme Court, the majority concedes that this construction has never been explicitly adopted by the Georgia courts. It must also be acknowledged that petitioner's interpretation of the jury's role under the Georgia law is not the only, or even the most plausible, construction of the death penalty statute. A "reasonable juror" could fairly conclude

---

[6] The *Sandstrom* Court also rejected the State's argument that the jury need not have relied on the challenged instruction in finding Sandstrom guilty of intentional murder. The State reasoned that because the tainted instruction could arguably be viewed as only relating to the defendant's "purpose," the jury might have convicted Sandstrom solely on the ground that he "knowingly" caused the death of the victim. Because the statute only requires that the crime be committed "purposefully *or* knowingly," the State argued that there was an alternative basis on which the conviction could be sustained. 442 U. S., at 525. Relying on *Stromberg v. California*, 283 U. S. 359 (1931), this Court refused to engage in such speculation, since "even if a jury *could* have ignored the presumption and found defendant guilty because he acted knowingly, we cannot be certain that this is what they *did* do." 442 U. S., at 526 (emphasis in original). There is similarly no way to tell whether respondent's jury adopted the Georgia Supreme Court's yet undisclosed interpretation of the Georgia death penalty statute.

that he or she was required to place special emphasis on the existence of statutory aggravating circumstances, and weigh them against each other and against any mitigating circumstances, when deciding whether or not to impose the death penalty. Cf. *Godfrey* v. *Georgia*, 446 U. S., at 428–429. Certainly several Members of this Court have operated under this assumption. See *Gregg* v. *Georgia*, 428 U. S., at 197–198, 221–222; *Godfrey* v. *Georgia, supra*, at 436–437 (MARSHALL, J., concurring in judgment); *Drake* v. *Zant*, 449 U. S. 999, 1001 (1980) (Stewart, J., dissenting from denial of certiorari).

If respondent's jury subscribed to this interpretation of their role, "their preconceptions were not dispelled by the trial judge's sentencing instructions." *Godfrey, supra*, at 429. Indeed, everything about the judge's charge highlighted the importance of the aggravating circumstances. Not only were the circumstances submitted to the jury in writing, but also the jury was in turn required to write down each and every aggravating circumstance that it found to be established beyond a reasonable doubt. See Ga. Code § 27–2534.1(c) (1978) discussed *supra*, at 420. The jury instructions provide absolutely no indication that, after carefully considering each of the statutory aggravating circumstances submitted by the trial judge, the jury should, or even could, discard this list of officially sanctioned grounds for imposing the death penalty in deciding whether to actually sentence respondent to death.

Absent even a shred of evidence that respondent's trial judge and jury were cognizant of petitioner's asserted construction of the Georgia death penalty statute, a construction never acknowledged by any Georgia appellate court, we can only speculate whether "the verdict in this case was not decisively affected by an unconstitutional statutory aggravating circumstance." 631 F. 2d, at 406. It is precisely to guard against such speculation that this Court has uniformly re-

fused to uphold a conviction or sentence that might have been based even in part on an unconstitutional ground.[7]    See *supra*, at 423.    Furthermore, in *Gregg* v. *Georgia, supra*, at 189, this Court made clear that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."    See also *Furman* v. *Georgia*, 408 U. S. 238 (1972).    Because nothing the Supreme Court of Georgia can say in response to this Court's certification will assure us that *respondent's jury* was "suitably directed,"[8] I must dissent.

JUSTICE POWELL, dissenting.

I am in essential agreement with the views expressed by JUSTICE MARSHALL in Part II of his dissenting opinion, and

---

[7] It is irrelevant whether the jury's determination was only partially based on the presence of the unconstitutional aggravating circumstance. As this Court held in *Street* v. *New York*, 394 U. S. 576 (1969), "even assuming that the record precludes the inference that appellant's conviction might have been based *solely* on [an unconstitutional ground], we are still bound to reverse if the conviction could have been based upon *both*" an unconstitutional and a constitutional ground.    *Id.*, at 587 (emphasis in original).

[8] The majority's implication that certifying this case will give the Georgia Supreme Court an opportunity to clarify whether it has the power to "assume the role of the jury when the sentencing jury recommended the death penalty under legally erroneous instructions," *ante*, at 415, does not alter my conclusion.    In affirming respondent's death sentence, the Georgia Supreme Court did not purport to exercise such authority.    Nor did the State argue that such action by the Georgia Supreme Court was permissible in the proceedings before this Court.    Indeed, prior to this Court's action today, it has always been assumed that "only the trier of fact may impose a death sentence."    *Willis* v. *Balkcom*, 451 U. S. 926, 928 (1981) (MARSHALL, J., joined by BRENNAN and Stewart, JJ., dissenting from denial of certiorari).    In any event, a "reviewing court can determine only whether a rational jury might have imposed the death penalty if it had been properly instructed; it is impossible for it to say whether a particular jury would have so exercised its discretion if it had known the law."    *Godfrey* v. *Georgia*, 446 U. S. 420, 437 (1980) (MARSHALL, J., concurring in judgment).

with his conclusion that the death sentence was imposed under instructions that could have misled the jury. I would not hold, however, that the case must be remanded for re-sentencing *by a jury*.

The Court of Appeals for the Fifth Circuit simply reversed and remanded, thus leaving it to the Georgia Supreme Court to determine whether resentencing by a jury is required in this case. It may be that under Georgia law the State Supreme Court lacks authority to resentence. If that should be the case, I would leave open—also for the Supreme Court of Georgia to decide—whether it has authority to find that the instruction was harmless error beyond a reasonable doubt.