William O. BEVINS, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

March 20, 1986.

Rehearing Denied Aug. 7, 1986.

Paul Isaacs, Public Advocate, Michael A. Wright, Marie Allison, Asst. Public Advocates, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Paul W. Richwalsky, Jr., Virgil W. Webb, III, Asst. Attys. Gen., Frankfort, for appellee.

LEIBSON, Justice.

The appellant has been sentenced to death for the murders of Roger Hatfield, Michael Halpert, Jarvey Hamilton, Rufus Hamilton and Roger Click. The appellant shot these men to death with an automatic rifle during a shooting spree at the Mountain Auto-Truck Parts Store in Allen, Kentucky, on October 16, 1981. The appellant also shot three others in the store, causing serious physical injury, and he has been convicted of aggravated assault for these offenses.

At the jury trial, after the first witness testified at length as to the details of the carnage, the appellant withdrew his plea of not guilty, entered a plea of guilty to all charges, and asked for judge sentencing. Appellant's motion, which was sustained, was:

> "To withdraw his plea of not guilty and enter a plea of guilty to all charges, waive the Stage Two trial by jury, waive the jury trial and submit the issue of aggravating, mitigating or extenuating circumstances as to the penalty to you, Your Honor."

■ Appellant's counsel stated this was done "after having his rights fully advised to him [the appellant] again and again." The court conducted inquiry appropriate to accepting a plea of guilty, which included separately questioning the appellant as to whether he admitted the facts stated against him in each charge. This inquiry sufficiently covered the fundamental rights which are waived when one pleads guilty as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The record shows that in this colloquy the appellant had "agreed to waive and he fully understands that he is waiving the right to a trial on the jury recommendation" as to sentencing.

The judge's colloquy also covered the sanity issue, which appellant's counsel had previously indicated would be appellant's principal defense. The reason stated on the record why the appellant was withdrawing his not guilty plea and entering a plea of guilty was because the defense of insanity was no longer a viable issue. Counsel advised the court:

> "Your Honor, we have learned in the interim that our medical evidence is contrary to our position relative to sanity."

In entering the plea of guilty counsel stated: "It has been fully explained to Mr. Bevins. That is his desire." The answers that the appellant gives thereafter confirm that the plea was made knowingly and voluntarily, and there is nothing in the record suggesting otherwise. Nevertheless, one of the principal grounds for appeal is that the record fails to sufficiently show, affirmatively, that the appellant knowingly, voluntarily and intelligently waived his fundamental constitutional right to a jury trial on the appropriate penalty.

■ The appellant argues that giving up the right to have the jury pass on the death sentence proves *per se* that the appellant didn't understand his rights. But the testimony of the first witness, Ronnie Bryant, was of such a devastating nature as to make it likely that the jury would have recommended death, a recommendation that the appellant might well have wished to avoid. Also, the sordid circumstances of the appellant's sexual relationship with Katie Sue Click, which the appellant would

offer during the penalty phase in an attempt to prove that he was emotionally disturbed, were such that jury trial would have probably been a poor choice. The fact that a jury recommendation of the death penalty is not binding on the judge certainly does not mean that it is of no consequence when the time comes for the judge to perform his sentencing function. There was no error in accepting the guilty plea and waiving jury trial of the penalty phase. Under KRS 532.025 judge sentencing was both authorized and appropriate in the circumstances of this case. Pleading guilty and waiving the jury was a choice the appellant made to try to help his case. There was no error in permitting the appellant to follow this procedure.

There are eleven assignments of error. One of them, whether the plea of guilty was properly taken, is covered above. Six concern what is essentially four questions as to the trial judge's conduct at the penalty phase, and these will be discussed hereafter in this opinion. The remaining four are questions pertaining to the constitutionality and administration of Kentucky's death penalty statute which we have considered and disposed of previously in other death penalty cases. We find nothing new in appellant's arguments. We hold against the appellant on these points.

The claims of error relating to the penalty phase raised on this appeal are:

1) The trial court improperly considered parole eligibility in deciding that the death sentence was appropriate.

2) The record fails to show adequate consideration of certain non-statutory potentially mitigating factors: viz., advanced age and poor health.

3) A 1930 murder conviction was improperly utilized as an aggravating factor.

4) The evidence compelled a finding that the death sentence should be mitigated because the appellant was suffering from extreme emotional disturbance at the time of the offenses, and the trial judge abused his discretion in deciding otherwise.

The appellant charges that the trial judge erroneously considered parole eligibility in making the decision to impose the death penalty. But the record does not confirm this interpretation of the facts. The statements made by the judge at the time he imposed the death sentence and his statement of reasons in the final judgment both indicate that this was an individualized sentence based on the "circumstances of these murders," that in these circumstances "no penalty other than the death penalty would be appropriate." These statements satisfy the requirement for individualized determination of sentencing in death penalty cases "on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982). In *Zant* the United States Supreme Court states that once there is proof of a statutory aggravating circumstance sufficient to put the defendant in the class eligible for the death penalty, the decision as to whether the death penalty is appropriate in the particular case then depends on the individualized circumstances in the case. The procedure here complied with the mandate of the United States Supreme Court in *Zant v. Stephens, supra.*

Once the judge had determined that death was the "only" appropriate penalty, there was no error in the judge next considering the possibility of parole in deciding whether to mitigate that penalty. In *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), the United States Supreme Court held that a California statute was not violative of the Eighth Amendment because it required the trial judge to instruct a jury which was about to consider the death penalty "that a sentence of life imprisonment without the possibility of parole may be commuted by the Governor to a sentence that includes the possibility of parole." The United States Supreme Court held that it is appropriate to evaluate the defendant's "future dangerousness" in deciding whether to mitigate the punishment in a case where the death penalty is otherwise appropriate.

In the present case the trial court stated on the record at a post sentencing hearing to reconsider the death penalty that he had made inquiry into the prospects of parole should life sentences be imposed. But the trial court further stated that he had already determined that the death penalty was appropriate before inquiring into parole eligibility. The procedure he followed was an appropriate one. Sentencing in Kentucky contemplates a two-stage procedure in which first a sentence is selected which is appropriate for the crime, and then information is utilized to decide whether that sentence should be mitigated. This is the reason our statutory scheme first requires the jury to fix a sentence appropriate to the crime, and then requires the judge to obtain a presentence report pursuant to KRS 533.010 before sentence is imposed. The presentence report contains information regarding the history, character, and condition of the defendant. See KRS 533.010(2). The sentencing procedure utilized by the judge contemplates considerations of future dangerousness and possibility of parole in deciding whether to mitigate the sentence previously arrived at.

In those cases where the jury is waived, the judge wears two hats. He both sets the sentence appropriate for the crime and then decides whether the history, character and condition of the defendant would make it appropriate to mitigate that sentence. It is appropriate that he obtain information regarding potential parole eligibility in order to perform the second function. Having such information does not disqualify the judge from performing the first. We operate on the assumption that the judge will perform as a professional who will not be deterred from setting a sentence appropriate to fit the nature and circumstances of the crime because he has obtained information appropriate to the second phase of the sentencing procedure. *See Brewer v. Commonwealth,* Ky., 550 S.W.2d 474 (1977).

The appellant contends that the trial court erred in considering a 1930 capital murder conviction as an aggravating circumstance. Both at trial, and in its Brief, the appellant concedes:

"No 'time limit' has ever been placed, nor should be placed, upon a prior conviction for a capital offense which would bar its introduction as an aggravating circumstance. The mere passage of time should not be allowed to eradicate that factor."

However, the appellant maintains that the remoteness of this earlier offense should be equally considered as a mitigating circumstance.

The record shows that appellant was convicted of willful murder in 1930. It was then a capital offense which carried the penalties of death or confinement in the penitentiary for life. The appellant was sentenced to life imprisonment, and he served eight years in prison before he was paroled for that offense in July of 1938.

The statute designates a prior conviction for a capital offense an aggravating circumstance without imposing any limitation for remoteness. KRS 532.025(2)(a)(1). A statutory aggravating circumstance serves to place the appellant in the class eligible for the death penalty. However, on the occasion of this crime the appellant murdered five people, so the appellant was already included in the "death eligible" class. KRS 532.025(2)(a)(6). Thus we need not decide the question of his eligibility for the death penalty because of commission of a prior capital offense. We need not decide what we would do if this were the only circumstance making the appellant eligible for the death penalty. In *Zant v. Stephens, supra,* the United States Supreme Court held that where one of several aggravating circumstances was unconstitutional, the death penalty was still appropriate because there were other statutory aggravating circumstances placing the defendant in the "death eligible" class.

In *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), the United States Supreme Court held that consideration of an aggravating factor not authorized by state law along with finding of several authorized aggravating factors

does not violate the Federal Constitution. *Barclay* holds that the state court could properly conclude that such consideration was harmless error in the circumstances of the case.

■ Since the appellant was already past the threshold of those eligible to be considered for the death penalty, there was no error in the trial court considering this previous conviction of a capital offense, however remote, as one of the circumstances bearing on whether the death penalty was appropriate in this particular case. It was not inappropriate for the trial court to consider this previous murder, albeit remote, as one of the factors bearing on whether death was an appropriate penalty for this appellant. We cannot, and do not, say that the fact that many years earlier a defendant has committed a previous capital murder counts for nothing.

Next, the appellant argues that the trial court was required to submit instructions to itself specifying how it would be guided in reaching a decision as to the penalty. On the contrary, KRS 532.025, which specifies the procedure for considering aggravating or mitigating circumstances, and deciding on the death penalty, expressly provides different procedures for when the judge must perform this function, as contrasted with the procedure when the jury must perform this function. In KRS 532.-025(1)(b), which is the procedure when a jury is used, the statute provides:

"Upon the conclusion of the evidence and arguments, the j\_ \_e shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in subsection (2) of this section, exist and to recommend a sentence for the defendant."

By contrast, KRS 532.025(1)(a), which applies when the judge must perform this function, specifies that:

"In such hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment.... Upon the conclusion of the evidence and arguments the judge shall

impose the sentence or shall recess the trial for the purpose of taking the sentence within the limits prescribed by law."

■ The trial court's procedure in this case followed the statute. The statute does not require that he specify in advance what aggravating and mitigating circumstances he would consider. It requires only that he "hear additional evidence in extenuation, mitigation, and aggravation of punishment," and that he "also hear argument by the defendant or his counsel and the prosecuting attorney, as provided by law, regarding the punishment to be imposed." KRS 532.025(1)(a). The record shows that he complied with these requirements.

Advanced age and poor health are relative terms. At the time of trial the appellant was seventy years old and had some health problems. But he appeared to be neither enfeebled nor debilitated in such a way that would make the death penalty shocking or grotesque.

■ Neither advanced age nor allegedly poor health is listed as a statutory mitigating circumstance which the trial court must consider in deciding upon the death penalty. *See* KRS 532.025(2)(b). We do not consider the fact that the record is silent on whether the trial judge considered these factors as proof that he would not have considered these factors had he deemed them relevant. The decision whether or not these factors should be considered relevant was his responsibility to make.

KRS 532.025(2)(b)(2) designates "extreme mental or emotional disturbance" a mitigating circumstance to be considered in deciding on the death penalty, "even though ... not sufficient to constitute a defense to the crime." The record shows that the trial court considered and rejected as a mitigating circumstance the appellant's claim that the offense was committed while the defendant was under "the influence of extreme mental or emotional disturbance."

The death penalty statute, KRS 532.-025(3) specifies if either jury or judge de-

cides upon the death penalty, it is required to "designate in writing ... the aggravating circumstance or circumstances which it found beyond reasonable doubt." The statute does *not* require the jury to designate the mitigating circumstances which it has rejected, and we have held that it is unnecessary for the jury to do so. *Smith v. Commonwealth*, Ky., 599 S.W.2d 900 (1980). There is no more reason to require the judge to enumerate the "nonexistence" of mitigating circumstances, than there is to require the jury to do so. Although the trial court was not required to do so, the judgment recites the trial court's finding that "the Defendant, at the time of the commission of the multiple of murder, was not acting under the influence of extreme mental or emotional disturbance."

We agree with the appellant's observation that it is difficult to arrive at a precise definition of what the statute means when it refers to an offense "committed while the defendant was under the influence of extreme mental or emotional disturbance." We take note that there is a difference in the usage of the term in the death sentencing statute, KRS 532.025(2)(b)(2), and its usage in the definition of murder, KRS 507.020(1)(a). Its use in the murder statute distinguishes between murder and manslaughter on the basis of whether the defendant:

"[A]cted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be."

The use of the term extreme emotional disturbance as described as a mitigating circumstance in KRS 532.025(2)(b)(2) is that it shall be so considered when:

"The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance even though the influence of extreme mental or emotional disturbance

is not sufficient to constitute a defense to the crime."

In *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 108–09 (1980), we attempted a discussion of the meaning of "extreme emotional disturbance" insofar as its absence distinguishes murder from first-degree manslaughter. The implication in *Gall* is that longstanding mental illness (in *Gall*, "chronic paranoid schizophrenia") is "not the kind of an emotional disturbance contemplated by the statute," except insofar as it predisposes a defendant to arousal by a sudden precipitating event. *See also* the Commentary to the Penal Code, KRS 507.030.

The most definitive case we have written on this subject is *Wellman v. Commonwealth*, Ky., 694 S.W.2d 696, 697–98 (1985):

"[M]ental illness may be considered by the jury in the reaction by a particular defendant when there is (first) probative, tangible and independent evidence of initiating circumstances, such as provocation at the time of his act which is contended to arouse extreme emotional disturbance. It is not such a disturbance when standing alone."

This brings us to the principal issue argued on this appeal, did the evidence compel a finding of "extreme mental or emotional disturbance" making the death penalty inappropriate? Otherwise stated, was there uncontradicted "probative, tangible, and independent evidence of initiating circumstances ... to arouse extreme emotional disturbance"? *Wellman, supra.*

In the present case much evidence was introduced through the defendant's psychiatrist as to a longstanding, bizarre and sordid sexual relationship between the appellant and a young girl, Katie Sue Click, who was married to one of the murder victims. The appellant claims that he had been regularly paying Katie Sue Click and her husband for her sexual favors and that the shooting spree was set off by an unexpected demand for an increase in the charge for her sexual favors. On the other hand there is other evidence in the record to indicate that the appellant had been con-

templating, planning and preparing to shoot Roger Click for some time and that he extended this into multiple killings in order to eliminate the possibility of witnesses. Two persons in the store were not shot, but the evidence suggests that the appellant was under the impression that these two would not identify him.

By his plea of guilty to murder the appellant admitted that he was not suffering from an extreme emotional disturbance so significant as to be a defense to the murder charges.[1] This brings us to the question whether the proof compels a finding of a lesser degree of emotional disturbance such as to compel a finding by the trial court of the presence of extreme emotional disturbance as a statutory mitigating circumstance.

In *Edmonds v. Commonwealth*, Ky., 586 S.W.2d 24, 27 (1979) we said:

"We find it unnecessary to define extreme emotional disturbance. It is suffice to say that we know it when we see it."[2]

Defining what is meant by "the influence of extreme mental or emotional disturbance" as a mitigating circumstance to the death penalty is as difficult as circumscribing its content as a defense in the guilt phase of a murder trial. Acting under the influence of extreme emotional disturbance may be difficult to define, but this case is not that.

■ For purposes of this opinion it suffices to say that a mitigating circumstance is defined in the statute in such broad terms that we should not substitute our judgment for that of the trial court who saw and heard the witnesses first hand. In addition to the evidence of planning and preparation before the tragedy, there was evidence regarding the accused's demeanor and appearance, and his calculated behavior during the period of time that he was in the store, and evidence of his behavior shortly thereafter, all of which indicated that while the accused might certainly be viewed as sexually maladjusted, he did not suddenly go berserk, triggered suddenly into irresistible, uncontrollable behavior, such as to excuse his crime or require mitigation of his punishment.

We find no substance to any of the assignments of error raised on this appeal.

KRS 532.075 requires our court to make review on the record, considering the punishment as well as any errors enumerated by way of appeal. We have done so.

With regard to the sentence, we determine that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the judge's finding of at least one statutory aggravating circumstance that puts the appellant in the death eligible class, and the evidence supports the trial court's conclusion that the individualized circumstances of this case makes death the "only appropriate penalty."

■ We have conducted a proportionality review, comparing this case with others where the death penalty has been imposed, and we have concluded that the sentence of death is not excessive or disproportionate to the penalty that has been imposed in similar cases, considering both the crime and the defendant.[3] While it is difficult to

---

1. Appellant's counsel contends that the record on the plea of guilty phase is inadequate because it does not affirmatively show that the trial judge explained to the appellant that he was giving up extreme emotional disturbance as a possible defense. No case, *Boykin v. Alabama, supra,* or any other, requires the trial court to explain possible defenses at the time of taking a guilty plea. This argument is too insubstantial to merit discussion in the body of this opinion.

2. Probably borrowed from the now famous line by former United States Supreme Court Justice Potter Stewart, who wrote of "obscenity" that it is difficult to define. "But I know it when I see it, and ... this case is not that." *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

3. The cases we have considered are:
   1) *Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1986), Pet. for Reh. Pending.
   2) *Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384 (1985).
   3) *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985).

compare circumstances between murder cases to arrive at the point where the circumstances of the murder are so abominable that only death is the appropriate punishment, it suffices for this case to say that the particular circumstances of this case qualify for the death penalty. We have conducted an independent review of these circumstances and conclude that these circumstances exceed any minimum threshold justifying capital punishment. The sentence is not excessive or disproportionate to the death penalty imposed in other cases.

The judgment is affirmed.

All concur.

4) *Harper v. Commonwealth,* Ky., 694 S.W.2d 665 (1985).

5) *White v. Commonwealth,* Ky., 671 S.W.2d 241 (1984).

6) *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984).

7) *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984).

8) *Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980).

9) *Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980).

10) *Hudson v. Commonwealth,* Ky., 597 S.W.2d 610 (1980).

11) *Boyd v. Commonwealth,* Ky., 550 S.W.2d 507 (1977).

12) *Meadows v. Commonwealth,* Ky., 550 S.W.2d 511 (1977).

13) *Self v. Commonwealth,* Ky., 550 S.W.2d 509 (1977).

14) *Lenston v. Commonwealth,* Ky., 497 S.W.2d 561 (1973).

15) *Scott v. Commonwealth,* Ky., 495 S.W.2d 800 (1973).

16) *Tinsley v. Commonwealth,* Ky., 495 S.W.2d 776 (1973).

17) *Galbreath v. Commonwealth,* Ky., 492 S.W.2d 882 (1973).

18) *Caine v. Commonwealth,* Ky., 491 S.W.2d 824 (1973).

19) *Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972).

20) *Leigh v. Commonwealth,* Ky., 481 S.W.2d 75 (1972).

21) *Call v. Commonwealth,* Ky., 482 S.W.2d 770 (1972).